UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE RICHARD GOLDBERG, SENIOR JUDGE

| | |
|---|---|
| DEACERO S.A.P.I. DE C.V. ET AL, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | Court No. 14-00205 |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| ARCELORMITTAL USA LLC, EVRAZ PUEBLO, ) | |
| GERDAU AMERISTEEL U.S. INC., KEYSTONE ) | |
| CONSOLIDATED INDUSTRIES, INC., AND ) | |
| NUCOR CORPORATION, ) | |
| ) | |
| Defendant-Intervenors. ) | |

## ORDER

Upon consideration of the Motion to Dismiss by ArcelorMittal USA LLC, Evraz Pueblo,

Gerdau Ameristeel U.S. Inc., and Keystone Consolidated Industries, Inc., it is hereby

**ORDERED** that the Motion to Dismiss is **GRANTED**; and it is further

**ORDERED** that this action is **DISMISSED** in its entirety.

_____
Judge

Dated: _____, 2015
        New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:     THE HONORABLE RICHARD GOLDBERG, SENIOR JUDGE

| | |
|---|---|
| DEACERO S.A.P.I. DE C.V. ET AL, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | Court No. 14-00205 |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| ARCELORMITTAL USA LLC, EVRAZ PUEBLO, ) | |
| GERDAU AMERISTEEL U.S. INC., KEYSTONE ) | |
| CONSOLIDATED INDUSTRIES, INC., AND ) | |
| NUCOR CORPORATION, ) | |
| ) | |
| Defendant-Intervenors. ) | |

## ORDER

Upon consideration of the Motion to Stay by ArcelorMittal USA LLC, Evraz Pueblo, Gerdau Ameristeel U.S. Inc., and Keystone Consolidated Industries, Inc., it is hereby

**ORDERED** that the Motion to Stay is **GRANTED**; and it is further

**ORDERED** that this action is stayed pending the Court's final decision in <u>Deacero S.A. De C.V. and Deacero USA, Inc. v. United States</u>, Ct. No 12-345, including any and all appeals of this Court's decision in that matter.

_____
Judge

Dated: _____, 2015
New York, New York

# UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE:   THE HONORABLE RICHARD GOLDBERG, SENIOR JUDGE**

|  |  |  |
|---|---|---|
| **DEACERO S.A.P.I. DE C.V. ET AL,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES,** | ) | **Court No. 14-00205** |
| | ) | |
| **Defendant,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **ARCELORMITTAL USA LLC, EVRAZ PUEBLO,** | ) | |
| **GERDAU AMERISTEEL U.S. INC., KEYSTONE** | ) | |
| **CONSOLIDATED INDUSTRIES, INC., AND** | ) | |
| **NUCOR CORPORATION,** | ) | |
| | ) | |
| **Defendant-Intervenors.** | ) | |

## DEFENDANT-INTERVENORS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY PROCEEDINGS

Pursuant to Rule 12(b)(1), defendant-intervenors ArcelorMittal USA LLC, Evraz Pueblo,

Gerdau Ameristeel U.S. Inc., and Keystone Consolidated Industries, Inc., respectfully request

that the Court dismiss this action filed by plaintiffs Deacero S.A.P.I. de C.V. and Deacero USA,

Inc. ("Deacero") for lack of subject-matter jurisdiction.  In the alternative, pursuant to Rules

7(b), 7(f), and 42(a)(3) of this Court, defendant-intervenors respectfully move for an order

staying further proceedings in this action pending a final decision in Deacero S.A. de C.V. and

Deacero USA, Inc. v. United States, Ct. No. 12-345.  For the reasons set forth in defendant-

intervenors' accompanying Memorandum in Support of Motion to Dismiss or, In the Alternative,

Motion to Stay Proceedings, defendant-intervenors are entitled to judgment in this action as a

matter of law.  Accordingly, defendant-intervenors respectfully request that the Court grant this

motion, and requests that the Court enter judgment for defendant-intervenors by dismissing plaintiffs' action with prejudice, or in the alternative, order a stay of further proceedings in this action pending a final decision in <u>Deacero S.A. de C.V. and Deacero USA, Inc. v. United States</u>, Ct. No. 12-345.

      Proposed orders are attached.

                Respectfully submitted,

PAUL C. ROSENTHAL
KATHLEEN W. CANNON
R. ALAN LUBERDA
DAVID C. SMITH
BENJAMIN BLASE CARYL
**KELLEY DRYE & WARREN LLP**
3050 K Street, N.W., Suite 400
Washington, D.C. 20007
(202) 342-8400
*Counsel to Defendant-Intervenors ArcelorMittal USA LLC, Evraz Pueblo, Gerdau Ameristeel US Inc., and Keystone Consolidated Industries, Inc.*

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE RICHARD GOLDBERG, SENIOR JUDGE

| | | |
|---|---|---|
| DEACERO S.A.P.I. DE C.V. ET AL, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | Court No. 14-00205 |
| | ) | |
| **Defendant,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ARCELORMITTAL USA LLC, EVRAZ PUEBLO, | ) | |
| GERDAU AMERISTEEL U.S. INC., KEYSTONE | ) | |
| CONSOLIDATED INDUSTRIES, INC., AND | ) | |
| NUCOR CORPORATION, | ) | |
| | ) | |
| **Defendant-Intervenors.** | ) | |

MEMORANDUM IN SUPPORT OF
DEFENDANT-INTERVENORS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
MOTION TO STAY PROCEEDINGS

PAUL C. ROSENTHAL
KATHLEEN W. CANNON
R. ALAN LUBERDA
DAVID C. SMITH
BENJAMIN BLASE CARYL
**KELLEY DRYE & WARREN LLP**
3050 K Street, N.W., Suite 400
Washington, D.C.  20007
(202) 342-8400
*Counsel to Defendant-Intervenors ArcelorMittal
USA LLC, Evraz Pueblo, Gerdau Ameristeel US
Inc., and Keystone Consolidated Industries, Inc.*

**January 16, 2015**

## Table of Contents

**Page**

TABLE OF AUTHORITIES ......................................................................... ii

STATEMENT OF FACTS AND PROCEDURAL BACKGROUND ........................................... 1

SUMMARY OF THE ARGUMENT ................................................... 5

ARGUMENT ................................................................................... 7

I.  APPLICABLE LEGAL STANDARDS ................................................ 7

    A.  Standard of Review for Motion to Dismiss for Lack of Subject-Matter Jurisdiction ............................................................... 7

    B.  Legal Standard for Staying Proceedings ................................................. 8

II.  DEACERO'S   COMPLAINT   LACKS   SUBJECT-MATTER JURISDICTION ................................................................ 9

    A.  This Court Should Dismiss Deacero's Complaint for Lack of Subject-Matter Jurisdiction Under Subsection 1581(c) and Lack of Standing ................................................................... 9

        1.  The Court Lacks Section 1581(c) Jurisdiction ............................................ 9

        2.  Deacero Lacks Standing to Bring a Section 1581(c) Action ..................... 15

    B.  This Court Should Dismiss Deacero's Complaint for Lack of Subject-Matter Jurisdiction under Subsection 1581(i) Because Deacero Is Already Pursuing An Adequate Remedy Under to 28 U.S.C. § 1581(c) ................................................................ 16

    C.  Conclusion ....................................................................... 20

III.  FURTHER PROCEEDINGS IN THIS ACTION SHOULD BE STAYED, PENDING ENTRY OF A FINAL JUDGMENT IN A RELATED ACTION .................................................................. 20

IV.  CONCLUSION ................................................................. 22

i

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

AOC Int'l v. United States,
  17 CIT 1412 (Ct. Int'l Trade 1993) ..................................................................17

Apex Exports v. United States,
  Ct. No. 11-291, Slip Op. 12-104,
  2012 Ct. Intl. Trade LEXIS 105 (Aug. 6, 2012) ........................................... 8, 20-21

Canadian Wheat Bd. v. United States,
  32 CIT 1116, 580 F. Supp. 2d 1350 (2008),
  aff'd, 641 F.3d 1344 (Fed. Cir. 2011) .................................................... 14, 15, 19-21

Cleo, Inc. v. United States,
  30 CIT 1380 (2006),
  aff'd,501 F.3d 1291 (Fed. Cir. 2007) ................................................................ 17-18

Deacero S.A. de C.V. v. United States,
  942 F. Supp. 2d 1321, 1332 (Ct. Int'l Trade 2013) ...................................................2

Deacero S.A. de C.V. v. United States,
  Ct. No. 12-345, Slip Op. 14-99, 2014 Ct. Intl. Trade LEXIS 99 (Aug. 28, 2014) ...................2

Deacero S.A. de C.V. v. United States,
  Ct. No. 12-345, Slip Op. 14-151, 2014 Ct. Intl. Trade LEXIS 159 (Dec. 22, 2014) ...............3

Diamond Sawblades Mfrs.' Coal. v. United States,
  Slip Op. 10-40, 2010 Ct. Intl. Trade LEXIS 40 (Apr. 15, 2010) ...............................8

Duferco Steel, Inc. v. United States,
  29 CIT 1249, 403 F. Supp. 2d 1281 (2005) ...........................................................16

Former Emps. Of Sonoco Prods. Co. v. United States Sec'y of Labor,
  27 CIT 812, 273 F. Supp. 2d 1336 (2003)
  aff'd, 372 F.3d 1291 (Fed. Cir. 2004) ................................................................7

Lane. v. Pena,
  518 U.S. 187 (1996) ...................................................................................7

Miller & Co. v. United States,
  824 F.2d 961 (Fed. Cir. 1987),
  cert. denied 484 U.S. 1041 (1988) ..................................................................19

Norsk Hydro Can., Inc. v. United States,
  472 F.3d 1347 (Fed. Cir. 2006)...................................................................16-17, 19

RHI Refractories Liaoning Co. v. United States,
  774 F. Supp. 2d 1280 (Ct. Int'l Trade 2011) ....................................................8, 20

Steel Co. v. Citizens for a Better Env't,
  523 U.S. 83 (1998)......................................................................................................7

Thomson v. Gaskill,
  315 U.S. 442 (1942).....................................................................................................7

Trustees in Bankruptcy of N. Amer. Rubber Thread Co. v. United States,
  593 F.3d 1346 (Fed. Cir. 2010)...........................................................................16, 18, 19

United States v. Islip,
  18 F. Supp. 2d 1047 (Ct. Int'l Trade 1998) ...............................................................7

Usinor Industeel, S.A. v. United States,
  26 CIT 1402 (2002) ...................................................................................................18

Yancheng Baolong Biochemical Prods. Co. v. United States,
  406 F.3d 1377 (Fed. Cir. 2005).................................................................................7

## STATUTES AND REGULATIONS

19 U.S.C. § 1516a.................................................................................... passim

19 U.S.C. § 1516a(a)(1) ........................................................................................9

19 U.S.C. § 1516a(a)(2)(A) ..................................................................................15

19 U.S.C.§ 1516a(a)(2)(B)(iii)...................................................................5, 6, 9, 13

19 U.S.C. § 1675 ..................................................................................5, 9, 13

19 U.S.C. § 1675(c) ...........................................................................5, 9, 10, 11

19 U.S.C. § 1675(c)(1)..........................................................................................10

19 U.S.C. § 1675(c)(2)..........................................................................................10

19 U.S.C. § 1675(c)(3)......................................................................................9, 10

19 U.S.C. § 1675(c)(4)..........................................................................................10

19 U.S.C. § 1675(c)(5)..................................................................................10-11

19 U.S.C. § 1675(c)(6)............................................................................................11

19 U.S.C. § 1675(c)(7)............................................................................................11

19 U.S.C. § 1675(d)(2) ...............................................................................5, 9, 11-13

19 U.S.C. § 1677f(i)..................................................................................... 4, 5-6, 13

19 U.S.C. § 1677f(i)(1) ..................................................................................4, 9, 12, 13

28 U.S.C. § 1581(i) ...................................................................................... passim

28 U.S.C. § 1581(c) ...................................................................................... passim

28 U.S.C. § 2631(c) ...............................................................................................15

19 C.F.R § 351.218(f)(4) .............................................................................4, 5, 13

19 C.F.R. § 351.102(b)(36)......................................................................................15

## ADMINISTRATIVE DETERMINATIONS

Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova,
    Trinidad and Tobago, and Ukraine,
    67 Fed. Reg. 65,945 (Dep't Commerce Oct. 29, 2002) ("order") ................................. passim

Carbon and Certain Alloy Steel Wire Rod from Mexico:
    Affirmative Final Determination of Circumvention of the Antidumping Duty Order,
    77 Fed. Reg. 59,892 (Dep't Commerce Oct. 1, 2012)
    ("Final Circumvention Determination") ........................................................... 1, 2, 15, 18-21

Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova,
    Trinidad and Tobago, and Ukraine,
    78 Fed. Reg. 33,103 (USITC June 3, 2013)...............................................................3

Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova,
    Trinidad and Tobago, and Ukraine:
    Final Results of the Expedited Second Sunset Review of the Antidumping Duty
    Orders, 78 Fed. Reg. 63,450 (Dep't Commerce Oct. 24, 2013)
    ("Final Results of Expedited Sunset Review")....................................................3-4, 9, 12, 15-16

Final Results of Redetermination Pursuant to Court Remand,
    Ct. No 12-345 (Dep't Commerce Jan. 29, 2014)
    (ECF No. 87) ("First Remand Results") .......................................................................2, 3, 17

Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova,
    Trinidad and Tobago, and Ukraine,
    79 Fed. Reg. 35,381 (USITC June 20, 2014)..........................................................4, 12

Carbon and Certain Alloy Steel Wire Rod from Brazil et al.,
    USITC Pub. 4472 (Second Review) (June 2014) .............................................4, 17

Carbon and Certain Alloy Steel Wire Rod From Brazil, Indonesia, Mexico, Moldova,
    and Trinidad and Tobago:
    Continuation of Antidumping and Countervailing Duty Orders,
    79 Fed. Reg. 38,008 (Dep't Commerce July 3, 2014)
    ("Continuation Notice").................................................................................. passim

Final Results of Second Redetermination Pursuant to Court Remand,
    Ct. No 12-345 (Dep't Commerce Oct. 20, 2014) (ECF No. 113) ........................ 2-3

Initiation of Five-Year ("Sunset") Review,
    78 Fed. Reg. 33,063 (Dep't Commerce June 3, 2013) ..........................................3

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:   THE HONORABLE RICHARD GOLDBERG, SENIOR JUDGE

|  |  |  |
|---|---|---|
| DEACERO S.A.P.I. DE C.V. ET AL, | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| UNITED STATES, | ) | Court No. 14-00205 |
| Defendant, | ) | |
| and | ) | |
| ARCELORMITTAL USA LLC, EVRAZ PUEBLO, GERDAU AMERISTEEL U.S. INC., KEYSTONE CONSOLIDATED INDUSTRIES, INC., AND NUCOR CORPORATION, | ) | |
| Defendant-Intervenors. | ) | |

## MEMORANDUM OF DEFENDANT-INTERVENORS IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY PROCEEDINGS

This memorandum is submitted by defendant-intervenors ArcelorMittal USA LLC, Evraz Pueblo, Gerdau Ameristeel U.S. Inc., and Keystone Consolidated Industries, Inc., in support of their Motion to Dismiss Or, In the Alternative, Motion to Stay Proceedings Pursuant to Rules 7(b), 7(f), 12(b)(1), and 42(a)(3) of this Court.

### STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

On October 29, 2002, the U.S. Department of Commerce ("Department" or "Commerce") issued an antidumping duty order on carbon and certain alloy steel wire rod from Mexico. Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine, 67 Fed. Reg. 65,945 (Dep't Commerce Oct. 29, 2002) ("order"). On September 24, 2012, the Department issued an affirmative final determination that

Deacero was circumventing that order by exporting wire rod with an actual diameter of 4.75 millimeter ("mm") to 5.00 mm ("4.75 mm wire rod").  <u>Carbon and Certain Alloy Steel Wire Rod from Mexico:  Affirmative Final Determination of Circumvention of the Antidumping Duty Order</u>, 77 Fed. Reg. 59,892 (Dep't Commerce Oct. 1, 2012) ("<u>Final Circumvention Determination</u>"), and accompanying Issues and Decision Memorandum.  Specifically, the Department determined that 4.75 mm wire rod was technically outside the literal scope of the order but constituted a minor alteration such that it should be included within the scope of the order.  <u>Id.</u>

On October 29, 2012, Deacero appealed the Department's <u>Final Circumvention Determination</u> to this Court.  <u>See</u> Complaint, <u>Deacero S.A. De C.V. and Deacero USA, Inc. v. United States</u>, Ct. No 12-345 (Ct. Int'l Trade Oct. 29, 2012) (ECF No. 5).  On September 30, 2013, the Court instructed the Department to reconsider its <u>Final Circumvention Determination</u>. <u>Deacero S.A. de C.V. v. United States</u>, 942 F. Supp. 2d 1321, 1332 (Ct. Int'l Trade 2013).  On January 28, 2014, "under respectful protest," the Department issued a remand redetermination concluding that 4.75 mm wire rod was not circumventing the order.  <u>Final Results of Redetermination Pursuant to Court Remand</u>, Ct. No 12-345 (Dep't Commerce Jan. 29, 2014) (ECF No. 87) ("<u>First Remand Results</u>") at 2, 6 n.26.  On August 28, 2014, this Court remanded the Department's <u>First Remand Results</u> so that the Department could "consider whether it wishes to revisit or elaborate" on its commercial availability finding.  <u>Deacero S.A. de C.V. v. United States</u>, Ct. No. 12-345, Slip Op. 14-99 at 13, 2014 Ct. Intl. Trade LEXIS 99 at *21-22 (Aug. 28, 2014).  On October 20, 2014, the Department issued its second redetermination on remand, informing the Court that the Department "does not request a remand to further consider 'commercial availability' in the context of this minor alteration proceeding" and that the

Department continues to "respectfully disagree" with the Court that commercial availability is relevant to minor alteration circumvention proceedings.  Final Results of Second Redetermination Pursuant to Court Remand, Ct. No 12-345 (Dep't Commerce Oct. 20, 2014) (ECF No. 113) at 9-10, 16, 22.  On December 22, 2014, this Court sustained the Department's negative circumvention determination contained in the First Remand Results.  Deacero S.A. de C.V. v. United States, Ct. No. 12-345, Slip Op. 14-151, 2014 Ct. Intl. Trade LEXIS 159 (Dec. 22, 2014).  The deadline for an appeal to the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") is February 20, 2015.

On June 3, 2013, the Department and the U.S. International Trade Commission ("ITC" or "Commission") initiated five-year "sunset reviews" of the antidumping duty orders on wire rod from Mexico and five other countries.  Initiation of Five-Year ("Sunset") Review, 78 Fed. Reg. 33,063 (Dep't Commerce June 3, 2013); Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine, 78 Fed. Reg. 33,103 (USITC June 3, 2013).  Defendant-intervenors participated in the sunset review proceedings at both the Department and the Commission.   Plaintiff Deacero, however, only participated in the Commission's sunset review proceeding.  See  Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine: Final Results of the Expedited Second Sunset Review of the Antidumping Duty Orders, 78 Fed. Reg. 63,450, 63,450 (Dep't Commerce Oct. 24, 2013) ("Final Results of Expedited Sunset Review") ("The Department received no responses from respondent interested parties with respect to any of the orders covered by these sunset reviews.")

The Department determined that revocation of the antidumping duty orders on wire rod would be likely to lead to continuation or recurrence of dumping.  Final Results of Expedited

Sunset Review, 78 Fed. Reg. at 63,450.  The ITC determined that revocation of the antidumping duty orders on wire rod from Mexico, Brazil, Indonesia, Mexico, Moldova, and Trinidad and Tobago would be likely to lead to continuation or recurrence of material injury.  Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine, 79 Fed. Reg. 35,381 (USITC June 20, 2014); see also Carbon and Certain Alloy Steel Wire Rod from Brazil et al., USITC Pub. 4472 (Second Review) (June 2014).  Neither Deacero nor any other Mexican respondent appealed the ITC's affirmative determination as to Mexico in the sunset review.  Nor did Deacero or any other party appeal the Commerce Department's final determination in the sunset review.  Thus, both of those decisions are final and conclusive.

On July 3, 2014, as a result of the affirmative determinations by the Department's and ITC's affirmative determinations in the sunset review, the Department issued a notice of continuation of the order "pursuant to section 777(i)(1) {19 U.S.C. § 1677f(i)(1)} of the Act and 19 CFR 351.218(f)(4)."  Carbon and Certain Alloy Steel Wire Rod From Brazil, Indonesia, Mexico, Moldova, and Trinidad and Tobago:  Continuation of Antidumping and Countervailing Duty Orders, 79 Fed. Reg. 38,008, 38,009 (Dep't Commerce July 3, 2014) ("Continuation Notice").  In the Continuation Notice, the Department set forth the scope of the orders, and included a statement citing its October 2012 circumvention finding as follows:

> On October 1, 2012, the Department published a final determination of circumvention, finding that shipments of wire rod with an actual diameter of 4.75 mm to 5.00 mm produced in Mexico and exported to the United States by Deacero S.A. de C.V. constitute merchandise altered in form or appearance in such minor respects that it should be included within the scope of the order on wire rod from Mexico.

<u>Continuation Notice</u> at 38,009.  In a footnote, the Department stated that "Deacero appealed the Department's final determination, and the case is currently pending" indicating that the question of the treatment of 4.75 mm diameter wire rod under the scope is not yet final.  <u>Id.</u> at n.4.  As a result, Commerce's <u>Continuation Notice</u> did not alter the current suspension of liquidation for imports of 4.75 mm wire rod from Mexico pending the outcome of the circumvention appeal.

On July 23, 2014, Deacero provided notice of its intent to challenge the <u>Continuation Notice</u> before this Court to the U.S. Secretary and Mexican Secretary to the North American Free Trade Agreement ("NAFTA") Secretariat.  On September 2, 2014, Deacero filed this action, challenging the Department's <u>Continuation Notice</u>.  Deacero has attempted to invoke the Court's jurisdiction pursuant to 28 U.S.C. §§ 1581(c) and 1581(i).

## SUMMARY OF THE ARGUMENT

This court does not possess jurisdiction to hear Deacero's claim under either 28 U.S.C. § 1581(c) or 28 U.S.C. § 1581(i).  Jurisdiction under section 1581(c) is only available to challenge the specific determinations listed under 19 U.S.C. § 1516a, and the contested <u>Continuation Notice</u> is not one of the determinations listed in section 1516a.  Deacero nonetheless claims that Commerce's <u>Continuation Notice</u> was issued pursuant to 19 U.S.C. §§ 1675(c) or 1675(d)(2), making Commerce's <u>Continuation Notice</u> a reviewable "final determination" under 19 U.S.C. § 1516a(a)(2)(B)(iii).  Deacero Complaint in the instant appeal at 1-2 (ECF No. 4).  That statutory provision encompasses "{a} final determination … by the administering authority or the Commission *under section 1675 of this title*." 19 U.S.C. § 1516a(a)(2)(B)(iii) (emphasis added).  Commerce's <u>Continuation Notice</u>, however, by its express terms was issued in accordance with 19 U.S.C. § 1677f(i) – not 19 U.S.C. § 1675 – and was published pursuant to 19 C.F.R. § 351.218(f)(4).  <u>Continuation Notice</u>, 79 Fed. Reg. at 38,009.  Decisions issued pursuant to 19

U.S.C. § 1677f(i) are not among the reviewable final determinations listed under section 1516a(a)(2)(B)(iii). Because Deacero's claim is not a reviewable final determination under section 1516a, Deacero's claim is not subject to judicial review under section 1581(c).

Jurisdiction pursuant to 28 U.S.C. § 1581(i) is also not available in this case because the ultimate question that Deacero is challenging is already the subject of litigation over which this court has jurisdiction under section 1581(c) in Deacero S.A. de C.V. v. United States, Ct. No. 12-345 ("Deacero 12-345"). The true nature of Deacero's challenge in this case is to Commerce's initial determination that 4.75 mm wire rod is circumventing the Mexican wire rod order. Deacero has already challenged that determination under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c) in a different action before the Court. See id. Deacero 12-345 and Deacero's instant appeal both fundamentally turn on whether Commerce's affirmative circumvention determination was ultimately correct. The Court's jurisdiction under section 1581(i) is not available in this case because jurisdiction pursuant to section 1581(c) has already been invoked for the same ultimate question in Deacero 12-345, providing Deacero a remedy that is not manifestly inadequate.

Finally, if the Court does not dismiss Deacero's appeal, further proceedings in this action should be stayed pending entry of a final judgment in the related action, Deacero S.A. de C.V. v. United States, Ct. No. 12-345, in order to promote judicial efficiency and avoid duplicative and unnecessary proceedings.

## ARGUMENT

## I.   APPLICABLE LEGAL STANDARDS

### A.   Standard of Review for Motion to Dismiss for Lack of Subject-Matter Jurisdiction

The Court's determination of subject-matter jurisdiction is a threshold inquiry.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998).  For a court to exercise jurisdiction to adjudicate a complaint against the United States, there must be a clear waiver of sovereign immunity.  "The Supreme Court has found that 'firmly grounded in {its} precedents' is the fact that '{a} waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text' and 'will not be implied.'"  Yancheng Baolong Biochemical Prods. Co. v. United States, 406 F.3d 1377, 1382 (Fed. Cir. 2005) (quoting Lane. v. Pena, 518 U.S. 187, 192 (1996)).  Moreover, the "scope" of any "waiver of the Government's sovereign immunity will be strictly construed... in favor of the sovereign."  Lane v. Pena, 518 U.S. at 192.

When jurisdiction is challenged pursuant to Rule 12(b)(1), plaintiff has the burden to establish the basis for jurisdiction.  Former Emps. of Sonoco Prods. Co. v. United States Sec'y of Labor, 27 CIT 812, 814, 273 F. Supp. 2d 1336, 1338 (2003) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)), aff'd, 372 F.3d 1291 (Fed. Cir. 2004).  "{T}he Court assumes that 'all well-pled factual allegations are true,' construing 'all reasonable inferences in favor of the nonmovant.'"  United States v. Islip, 18 F. Supp. 2d 1047, 1051 (Ct. Int'l Trade 1998) (quoting Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).  Where "a plaintiff's allegations of jurisdictional facts are challenged by the defendant," however, "the plaintiff bears the burden of supporting the allegations by competent proof."  Thomson v. Gaskill, 315 U.S. 442, 446 (1942) (citations omitted).  When the requirements for establishing jurisdiction are not satisfied, the complaint must be dismissed pursuant to Rule 12(b)(1).

**B.**     <u>**Legal Standard for Staying Proceedings**</u>

The Supreme Court has held that "{t}he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." <u>Apex Exports v. United States</u>, Ct. No. 11-291, Slip Op. 12-104 at 3, 2012 Ct. Intl. Trade LEXIS 105 at *4 (Aug. 6, 2012) ("<u>Apex Exports</u>") (quoting <u>Landis v. North American Co.</u>, 299 U.S. 248, 254 (1936)); <u>Diamond Sawblades Mfrs.' Coal. v. United States</u>, Slip Op. 10-40 at 4, 2010 Ct. Intl. Trade LEXIS 40 at *5-6 (Apr. 15, 2010) ("<u>Diamond Sawblades</u>").  The decision when and how to stay a proceeding rests "'within the sound discretion of the trial court.'" <u>Apex Exports</u>, Slip Op. 12-104 at 3, 2012 Ct. Intl. Trade LEXIS 105 at *4-5 (quoting <u>Cherokee Nation of Oklahoma v. United States</u>, 124 F.3d 1413, 1416 (Fed. Cir. 1997)).

To determine whether a stay is appropriate, the Court balances the competing interests of the moving and non-moving parties as well as the interests of the court: "Although the court is neutral, it does have an interest in the efficient use of judicial resources which it is obliged to consider." <u>Diamond Sawblades</u>, Slip Op. 2010-40 at 6, 2010 Ct. Intl. Trade LEXIS 40 at *7-9. Further, Rule 42(a)(3) of this Court authorizes the Court to "issue any other orders to avoid unnecessary cost or delay" where "actions before the court involve a common question of law or fact."   This rule affords the Court "broad discretion to grant or deny" the request.   <u>RHI Refractories Liaoning Co. v. United States</u>, 774 F. Supp. 2d 1280, 1283 (Ct. Int'l Trade 2011) (internal citations omitted) ("<u>RHI Refractories</u>").  "Of the factors that the court may consider in reaching its decision when two cases involve common legal or factual threads, judicial economy sits chief among them." <u>Id.</u>

## II.   DEACERO'S COMPLAINT LACKS SUBJECT-MATTER JURISDICTION

### A.   This Court Should Dismiss Deacero's Complaint for Lack of Subject-Matter Jurisdiction Under Subsection 1581(c) and Lack of Standing

#### 1.   The Court Lacks Section 1581(c) Jurisdiction

Deacero claims the Court has jurisdiction in this case under 28 U.S.C. § 1581(c), which is by its expressed terms only available for actions commenced under 19 U.S.C. § 1516a. Commerce's <u>Continuation Notice</u>, however, is not one of the reviewable final determinations specifically listed under 19 U.S.C. § 1516a and, as a result, the Court cannot exercise jurisdiction under 28 U.S.C. § 1581(c).

According to Deacero, the Department issued the <u>Continuation Notice</u> under the authority of 19 U.S.C. § 1675(c) and (d)(2).   Deacero Complaint at 1-2 (ECF No. 4).[1]   Deacero's Complaint fails to demonstrate that Commerce's <u>Continuation Notice</u> is a reviewable final determination under section 1516a(a)(2)(B)(iii).   The only reviewable determinations under section 1516a(a)(2)(B)(iii) are "final determination{s}, other than a determination reviewable under paragraph (1) {of section 1516a(a)}, by the administering authority or the Commission under section 1675 of this title."   19 U.S.C. § 1516a(a)(2)(B)(iii) {material in braces added}. The <u>Continuation Notice</u> is not a final determination under § 1675, but is instead a notice issued under the authority of 19 U.S.C. § 1677f(i)(1).

---

[1] The only reviewable determination under section 1675(c) that is listed in § 1516a(a)(1) is a section 1675(c)(3) determination to revoke the order based on no, or an inadequate, response by the domestic industry to Commerce's notice of initiation. That provision is not applicable to this case as Commerce made a finding of adequacy that was not challenged by Deacero. <u>Final Results of Expedited Sunset Review</u>, 78 Fed. Reg. at 63,450 ("The Department received no responses from respondent interested parties with respect to any of the orders covered by these sunset reviews.").

Deacero is unable to meet its burden to demonstrate that the language in section 1675(c) covers continuation notices in order to establish jurisdiction under 28 U.S.C. § 1581(c). Section 1675(c) addresses only the initiation process of five-year reviews, the conduct and timing of those reviews, and implications of actions by parties for final agency determinations in five-year reviews:

- After an order is issued or continued, or an investigation suspended, every five-years, "the administering authority and the Commission shall conduct a review to determine, in accordance with section 1675a of this title, whether revocation of the countervailing or antidumping duty order or termination of the investigation suspended under section 1671c or 1673c of this title would be likely to lead to continuation or recurrence of dumping or a countervailable subsidy (as the case may be) and of material injury." 19 U.S.C. § 1675(c)(1).

- "Not later than 30 days before the fifth anniversary of the date described in paragraph (1), the administering authority shall publish in the Federal Register a notice of initiation of a review under this subsection…" 19 U.S.C. § 1675(c)(2).

- "If no interested party responds to the notice of initiation under this subsection, the administering authority shall issue a final determination, within 90 days after the initiation of a review, revoking the order or terminating the suspended investigation to which such notice relates… If interested parties provide inadequate responses to a notice of initiation, the administering authority, within 120 days after the initiation of the review, or the Commission, within 150 days after such initiation, may issue, without further investigation, a final determination based on the facts available, in accordance with section 1677e of this title." 19 U.S.C. § 1675(c)(3).

- "An interested party described in section 1677(9)(A) or (B) of this title may elect not to participate in a review conducted by the administering authority under this subsection and to participate only in the review conducted by the Commission under this subsection… In a review in which an interested party waives it participation pursuant to this paragraph, the administering authority shall conclude that revocation of the order or termination of the investigation would be likely to lead to continuation or recurrence of dumping or a countervailable subsidy (as the case may be) with respect to that interested party." 19 U.S.C. § 1675(c)(4).

- "Unless the review has been completed pursuant to paragraph (3) or paragraph (4) applies, the administering authority shall make its final determination pursuant to section 1675a(b) or (c) of this title within 240 days after the date on which a review is initiated under this subsection. If the administering authority makes a

10

final affirmative determination, the Commission shall make its final affirmative determination pursuant to section 1675a(a) of this title within 360 days after the date on which a review is initiated under this subsection... The administering authority or the Commission (as the case may be) may extend the period of time for making their respective determinations under this subsection by not more than 90 days, if the administering authority or the Commission (as the case may be) determines that the review is extraordinarily complicated.  In a review in which the administering authority extends the time for making a determination, the Commission's determination shall be made not later than 120 days after the date on which the final determination of the administering authority is published... The Commission, in consultation with the administering authority, may group orders or suspended investigations for review if it considers that such grouping is appropriate and will promote administrative efficiency..."   19 U.S.C. § 1675(c)(5).

- "The administering authority shall begin its review of transition orders in the 42nd calendar month after the date such orders are issued.  A review of all transition orders shall be initiated not later than the 5th anniversary after the date such orders are issued... The administering authority, in consultation with the Commission, shall determine such sequence of review of transition orders as it deems appropriate to promote administrative efficiency.  To the extent practicable, older orders shall be reviewed first..." 19 U.S.C. § 1675(c)(6).

- "{T}here shall be excluded from the computation of the 5-year period described in paragraph (1) and the periods described in paragraph (6) any period during which the importation of subject merchandise is prohibited on account of the imposition, under the International Emergency Economic Powers Act {50 U.S.C.A. § 1701 et seq.} or other provision of law, of sanctions by the United States against the country in which the subject merchandise originates... {This requirement} shall apply only with respect to subject merchandise which originates in a country that is not a WTO member." 19 U.S.C. § 1675(c)(7) (material in brackets added).

As the plain language of the statute demonstrates, none of the subsections of 19 U.S.C. § 1675(c) even reference a continuation notice, much less provide the authority to issue one.  Id.  Further, this subsection does not address how or when notification or publication of any such continuance should be executed.

The alternative statutory section on which Deacero predicates its claim for jurisdiction under section 1581(c) is 19 U.S.C. § 1675(d)(2).  Deacero Complaint at 1-2 (ECF No. 4). Subsections 1675(d)(2)(A) and (B) require revocations unless Commerce and the ITC issue

11

affirmative determinations that the unfair trade practice and resulting injury, respectively, will continue or recur:

> In the case of a review conducted under subsection (c) of this section, the administering authority shall revoke a countervailing duty order or an antidumping duty order or finding, or terminate a suspended investigation, unless—
>
> > (A)   the administering authority makes a determination that dumping or a countervailable subsidy, as the case may be, would be likely to continue or recur, and
> >
> > (B)   the Commission makes a determination that material injury would be likely to continue or recur as described in section 1675a(1) of this title.

19 U.S.C. § 1675(d)(2).  These subsections do not (1) provide for or discuss continuation notices; (2) address how an order should be continued if the order is not revoked;  or (3) address how or when notification or publication of any such continuance should be executed.  To the extent that Deacero is basing section 1581(c) jurisdiction on final determinations rendered by Commerce and the ITC under these subsections, it would have been required to timely appeal one or both of those section 1675(d)(2) final determinations, not the <u>Continuation Notice</u> issued under 19 C.F.R § 351.218(f)(4).   <u>See</u> <u>Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine: Final Results of the Expedited Second Sunset Review of the Antidumping Duty Orders</u>, 78 Fed. Reg. 63,450 (Dep't Commerce Oct. 24, 2013); <u>Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine</u>, 79 Fed. Reg. 35,381 (USITC June 20, 2014).  Those decisions are subject to appeal under section 1516a(a)(2)(B)(iii) and section 1581(c) – but Deacero did not pursue any such appeals.

In contrast, Commerce's <u>Continuation Notice</u> was published pursuant to 19 U.S.C. § 1677f(i)(1) and 19 C.F.R. § 351.218(f)(4).  <u>See</u> <u>Continuation Notice</u>, 79 Fed. Reg. at 38,009 ("These five-year (sunset) reviews and notice are in accordance with section 751(c) of the Act and *published pursuant to section 777(i)(1) of the Act and 19 C.F.R 351.218(f)(4)*") (emphasis added).  Publication of the <u>Continuation Notice</u> pursuant to section 1677f(i)(1) is not an appealable event listed under section 1516a.  In fact, section 1677f(i)(1) neither mentions continuation notices or requires that continuation notices be published.  The requirement for the publication of continuation notices is contained in section 351.218(f)(4) of the Department's regulations.  19 C.F.R. § 351.218(f)(4).  A review of 19 U.S.C. § 1677f(i) shows that the provision is simply ministerial in nature.  Subsection (1) of section 777(i) of the Act, "Publication of determinations; requirements for final determinations," states:

> Whenever the administering authority makes a determination under 1671a or 1673a of this title whether to initiate an investigation, or the administering authority or the Commission makes a preliminary determination under section 1671b or 1673b of this title, a final determination under section 1671d or section 1673d of this title, a preliminary or final determination in a review under section 1675 of this title, a determination to suspend an investigation under this subtitle, or a determination under section 1675b of this title, the administering authority or the Commission, as the case may be, shall publish the facts and conclusions supporting that determination, and *shall publish notice of that determination in the Federal Register.*

19 U.S.C. § 1677f(i)(1) (emphasis added).  Under section 351.218(f)(4) of the Department's regulations, the Department will "normally issue its determination to continue an order... not later than seven days after the date of publication in the Federal Register of the International Trade Commission's determination concluding the sunset review.  The Department immediately thereafter will publish notice of its determination in the Federal Register."  19 C.F.R. §

351.218(f)(4).   The <u>Continuation Notice</u> thus followed from, and was consistent with, the requirements of section 1675(d)(2), but it is not a substantive final determination under section 1675 that is reviewable final determinations under 19 U.S.C. § 1516a(a)(2)(B)(iii).   Deacero's attempt to bootstrap jurisdiction over its appeal of a decision issued under a nonreviewable statutory provision must be rejected.

In an analogous case, this Court has explained that a notice of revocation that was the result of a NAFTA proceeding is not a reviewable final determination under 19 U.S.C. § 1516a because the notice "'was not made during any proceeding that would culminate in a determination for which judicial review is provided under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c).'"  <u>Canadian Wheat Bd. v. United States</u>, 32 CIT 1116, 1124, 580 F. Supp. 2d 1350, 1359 (2008), <u>aff'd</u>, 641 F.3d 1344 (Fed. Cir. 2011) ("<u>Canadian Wheat Bd.</u>") (quoting <u>Ceramica Regiomontana, S.A. v. United States</u>, 557 F. Supp. 596, 600 (Ct. Int'l Trade 1983)). Specifically, this Court found that although the Department may have had internal discussions regarding the contents of the notice of revocation, "its legal conclusion that the revocation of the orders should be prospective only, was reached without notice, public hearings or briefing by the parties, and was outside of the reviewable determinations found in 19 U.S.C. § 1516a." <u>Id.</u> Thus, the CIT found that the plaintiffs in <u>Canadian Wheat Bd.</u> had no remedy available to them because, like Deacero in this case, the act being appealed was not an act specifically listed under 28 U.S.C. § 1581(c). <u>Id.</u>

The argument against section 1581(c) jurisdiction in the case currently before the Court is even stronger than that in <u>Canadian Wheat Bd.</u>  First, there is no indication that Commerce had any substantive internal discussion regarding the contents of Commerce's <u>Continuation Notice</u> here as the Court found may have occurred in <u>Canadian Wheat Bd.</u>  Instead, the <u>Continuation</u>

14

Notice was merely a *pro forma* administrative Federal Register notice.  Second, as in Canadian Wheat Bd., Commerce's decision to continue the order was reached without notice, public hearings or briefing by the parties.[2]  See id.  Third, unlike the plaintiffs in Canadian Wheat Bd. that were challenging Commerce's revocation date and liquidation instructions (i.e., legal conclusions contained only in the challenged notice of revocation), Deacero is challenging no legal conclusion made by Commerce in the Continuation Notice, but rather a legal conclusion that occurred in the Final Circumvention Determination.  Finally, Deacero is already challenging Commerce's Final Circumvention Determination regarding 4.75 mm wire rod in a separate proceeding under subsection 1581(c).  See Deacero S.A. De C.V. and Deacero USA, Inc. v. United States, Ct. No 12-345 (Ct. Int'l Trade Oct. 29, 2012) (ECF No. 5).

Thus, because Commerce's Continuation Notice is outside of the reviewable determinations found in 19 U.S.C. § 1516a, the Court has no jurisdiction under 28 U.S.C. § 1581(c) to provide Deacero with a remedy available.  Id.

## 2.    Deacero Lacks Standing to Bring a Section 1581(c) Action

Deacero also does not have standing to challenge the Continuation Notice under section 1581(c).   Under 19 U.S.C. § 1516a(a)(2)(A), an action under section 1581(c) may be commenced by "an interested party who is a party to the proceeding in connection with which the matter arises…"  In parallel, 28 U.S.C. § 2631(c) provides that "{a} civil action contesting a determination listed in {19 U.S.C. § 1516a} may be commenced in the Court of International Trade by any interested party who was a party to the proceeding in connection with which the matter arose."  The Department's regulations define the term "party to the proceeding" as "any

---

[2] In contrast, Commerce and the ITC's final sunset determinations—which are reviewable final determinations under 19 U.S.C. § 1516a—were reached after notice, comment, and briefing.

interested party that actively participates, through written submissions of factual information or written argument, in a segment of a proceeding." 19 C.F.R. § 351.102(b)(36).  Deacero did not enter an appearance or otherwise participate in the proceedings before Commerce, and therefore was not a party to the proceeding.  <u>Final Results of Expedited Sunset Review</u>, 78 Fed. Reg. at 63,450 ("The Department received no responses from respondent interested parties with respect to any of the orders covered by these sunset reviews.").

> **B.** **<u>This Court Should Dismiss Deacero's Complaint for Lack of Subject-Matter Jurisdiction under Subsection 1581(i) Because Deacero Is Already Pursuing An Adequate Remedy Under to 28 U.S.C. § 1581(c)</u>**

The Court also lacks subject matter jurisdiction to entertain Deacero's complaint pursuant to 28 U.S.C. § 1581(i) because Deacero has not demonstrated the unavailability of an adequate remedy pursuant to any other subsection of section 1581.  The Court's jurisdiction pursuant to 28 U.S.C. § 1581(i) is limited and "'may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate.'" <u>Trustees in Bankruptcy of N. Amer. Rubber Thread Co. v. United States</u>, 593 F.3d 1346, 1352 (Fed. Cir. 2010) ("<u>Rubber Thread</u>") (quoting <u>Int'l Custom Products v. United States</u>, 467 F.3d 1324, 1327 (Fed. Cir. 2006) ("<u>Int'l Custom Products</u>") and <u>Norcal/Crosetti Foods, Inc. v. United States</u>, 963 F.2d 356, 359 (Fed. Cir. 1992)).  Indeed, this Court has reiterated the limitations of subsection 1581(i) jurisdiction:

> a plaintiff may successfully seek redress under section 1581(i)'s residual jurisdiction only after exhausting its remedies under subsections (a) through (h) of that section.  Section 1581(i) is a litigant's port of last resort.  If a plaintiff can access the Court of International Trade through… any other means short of invoking section 1581(i)—it must avail itself of {that} avenue of approach.

<u>Duferco Steel, Inc. v. United States</u>, 29 CIT 1249, 1253, 403 F. Supp. 2d 1281, 1285 (2005) (citations and internal quotations omitted).

When considering whether to assert jurisdiction under section 1581(i), the Federal Circuit

has instructed the court to look to "the true nature of the action" at the outset of the proceeding in

order to determine which avenue of review, if any, is appropriate.  Norsk Hydro Can., Inc. v.

United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006) (citation omitted) ("Norsk Hydro").   If

litigants "have the right to obtain review of the substantive question and to receive appropriate

remedies under other jurisdictional provisions, the remedies are not manifestly inadequate."

AOC Int'l v. United States, 17 C.I.T. 1412, 1414-15 (Ct. Int'l Trade 1993).  Further, "{m}erely

because plaintiffs did not avail themselves of a remedy under the proper provision, does not

make the remedy inadequate as a matter of law." Id. at 1415.

The true nature of Deacero's complaint in fact involves a determination of the coverage

of the scope of the order.   The crux of Deacero's complaint is that the ITC did not treat 4.75

mm wire rod as "subject merchandise" in reaching its affirmative final determination based on

the status of the Deacero 12-345 appeal, which was not finalized at the time.   Specifically, the

ITC treated 4.75 mm wire rod imported from Mexico as nonsubject merchandise in assessing the

impact of imports of wire rod from Mexico in accordance with the Department's First Remand

Results in Court No. 12-345:

> We are under no obligation to treat Deacero's 4.75 mm shipments
> of wire rod to the United States as subject imports because, as
> explained in section II of this opinion, 4.75 mm wire rod was not
> originally within the scope of these reviews and the latest
> Commerce decision does not include 4.75 mm wire rod within the
> scope…

Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, Trinidad

and Tobago, and Ukraine, USITC Pub. No. 4472, Inv. Nos. 701-TA-417 and 731-TA-953, 957-

959, 961, and 962 (Second Review) (June 2014) at 17 n.91.  Having no authority to determine

the scope of the order, the ITC merely cited to Commerce's scope determination in its decision. See, e.g., Cleo, Inc. v. United States, 30 CIT 1380, 1383 (2006) ("'the Commission must accept the determination of Commerce as to the scope of the imported merchandise sold at less than fair value. . . .'") (quoting NEC Corp. v. Department of Commerce, 36 F. Supp. 2d 380, 383 (Ct. Int'l Trade 1998)), aff'd, 501 F.3d 1291 (Fed. Cir. 2007); Usinor Industeel, S.A. v. United States, 26 CIT 1402, 1405 (2002) ("It is well established . . . that 'Commerce has inherent authority to define and clarify the scope of an antidumping duty investigation.'") (quoting San Francisco Candle Co. v. United States, 206 F. Supp. 2d 1304, 1308 (Ct. Int'l Trade 2002)).

In this new appeal before the Court, Deacero is challenging the same legal conclusion by requesting that the Court order Commerce to revoke the order with respect to 4.75 mm wire rod. See Deacero Complaint at 8 (ECF No. 4). Thus, the proper scope of the order, as ultimately determined by Commerce, is the question at the center of both of Deacero's appeals (Ct. Nos. 12-345 and 14-205). Because Deacero already has a separate action before this Court in Ct. No. 12-345 seeking reversal of Commerce's Final Circumvention Determination with respect to the treatment of 4.75 mm wire rod under the scope of the continued order, it has an adequate remedy available to it under section 1581(c) and section 1581(i) jurisdiction is not available.

The Federal Circuit's decision in Rubber Thread addresses a similar scenario to that before the Court. In Rubber Thread, the plaintiff had already challenged the effective revocation date of an order contained in Commerce's final results in a changed circumstances review. Rubber Thread, 593 F.3d at 1350. While that appeal was pending, plaintiff challenged Commerce's refusal to initiate a second changed circumstances review of the same order brought in the hope of changing the effective revocation date. Id. The plaintiff in Rubber Thread successfully invoked the court's residual jurisdiction under section 1581(i) before this Court. Id.

at 1351.  The Federal Circuit reversed, finding that there was no jurisdiction over plaintiff's second challenge to the effective revocation date under section 1581(i) because plaintiff's first challenge of the same legal conclusion under section 1581(c) was not "manifestly inadequate." Id. at 1352-53.

Similarly here, because Deacero's claim was available for review under another subsection of section 1581, and because the remedy provided under that other subsection was not manifestly inadequate, jurisdiction over this separate challenge is barred.  Id.  The "true nature" of both challenges is to ensure that the Mexican wire rod order does not cover 4.75 mm wire rod. See Norsk Hydro, 472 F.3d at 1355.  If Deacero is ultimately successful in Deacero 12-345, the Mexican wire rod order will not cover 4.75 mm wire rod, which is the same outcome sought by plaintiff in this suit, ultimately based on the same circumvention determination by Commerce. Thus, Deacero's pre-existing appeal of Commerce's Final Circumvention Determination provides an adequate remedy that precludes section 1581(i) jurisdiction in this case.[3]  Under the analysis in Rubber Thread, Deacero cannot invoke section 1581(i) jurisdiction in a separate action to challenge the same ultimate determination that is already the subject of an appeal properly invoking section 1581(c) jurisdiction.

Deacero's reliance on Canadian Wheat Bd. to establish section 1581(i) jurisdiction in this case is misplaced.  Deacero's Complaint at 2.  That case concerned a notice of revocation of an order as the result of a NAFTA proceeding in which plaintiff challenged a legal conclusion as to the proper revocation date which was discussed only in the notice of revocation.  580 F. Supp. 2d

---

[3]  Deacero has not pled that the potential remedy in its direct appeal of the the Final Circumvention Determination is in any way inadequate.  See Miller & Co. v. United States, 824 F.2d 961 (Fed. Cir. 1987), cert. denied 484 U.S. 1041 (1988) ("Where another remedy is or could have been available, the party asserting § 1581(i) jurisdiction has the burden to show how that remedy would be manifestly inadequate.") (citations omitted).

at 1353-56 and 1360-61.  In contrast, the challenged <u>Continuation Notice</u> in this case does not include any new legal conclusion or factual finding regarding 4.75 mm wire rod.  Further, the court in <u>Canadian Wheat Bd</u>  found that the "true nature" of the plaintiff's claim was a challenge to Commerce's liquidation instructions rather than the underlying revocation determination by the agency, making the case properly reviewable under subsection 1581(i) rather than subsection 1581(c).   The true nature of both of Deacero's appeals is the challenge to Commerce's determination that 4.75 mm wire rod should be covered by the order as a result of the circumvention finding.   Because Deacero has already appealed that issue invoking section 1581(c) jurisdiction, it may not now invoke section 1581(i) jurisdiction in a separate action on substantially the same issue.

### C.   <u>Conclusion</u>

For each of these reasons, Deacero has failed to invoke the jurisdiction of the Court under either sections 1581(c) or 1581(i), defendant-intervenors respectfully request that the Court dismiss this action for lack of subject-matter jurisdiction.

## III.   <u>FURTHER PROCEEDINGS IN THIS ACTION SHOULD BE STAYED, PENDING ENTRY OF A FINAL JUDGMENT IN A RELATED ACTION</u>

Presently before this Court are two actions that seek the same relief, namely for the Court to find that 4.75 mm wire rod is not covered by the antidumping duty order on wire rod from Mexico.  Because the <u>Final Circumvention Determination</u> appeal (Ct. No. 12-345) already includes three opinions from this Court and two remand determinations from the Department and briefing has not even commenced for the <u>Continuation Notice</u> appeal (Ct. No. 14-205), staying the latter "will promote judicial economy and preserve the resources of the parties and the court." <u>RHI Refractories</u>, 774 F. Supp. 2d at 1285.  A "streamlined resolution of the chief issue"— whether 4.75 mm wire rod is covered by the order—"will facilitate judicial economy and prevent

unnecessary, duplicative briefing." Id.; see also Apex Exports, Slip Op. 12-104 at 4, 2012 Ct. Intl. Trade LEXIS 105 at *5-6 ("the proposed stay serves the interest of judicial economy and conservation of the parties' resources."). Specifically, a final court decision upholding the most recent remand results reversing the Department's Final Circumvention Determination (including any and all appeals of such a decision) in Deacero would render this appeal of the Department's Continuation Notice moot, as 4.75 mm wire rod will be deemed to be outside the scope of the order.

Further, no hardship will occur to any party or to the Court if a stay is issued. Indeed, the issuance of a stay will ensure the efficient use of the scarce time and resources of this Court and the parties to this action. See Apex Exports, Slip Op. 12-104 at 4, 2012 Ct. Intl. Trade LEXIS 105 at *5 ("the Court fails to see what harm the stay would cause to either party."). If the Court issues an order staying further proceedings in this action until there is a final judgment in Deacero S.A. de C.V. v. United States, Ct. No. 12-345, the Court will not be required to spend time reviewing briefs or conducting a hearing in this appeal if Deacero ultimately prevails in that matter. Similarly, both the moving and non-moving parties will avoid preparing briefs or participating in hearings in this appeal that may be rendered unnecessary if Deacero ultimately prevails in Deacero 12-345. These facts weigh strongly in favor of granting defendant-intervenors' motion for a stay.

For the foregoing reasons, defendant-intervenors therefore respectfully request that this Motion be granted and that this case be stayed pending a final decision in Deacero S.A. de C.V. v. United States, Ct. No. 12-345, including any and all appeals of that decision.

As set forth in the December 3, 2014 Joint Status Report and Proposed Briefing Schedule, Jane C. Dempsey, counsel to the United States, indicated that the United States

opposes staying this appeal.  ECF No. 30 at 2.  Similarly, Jay C. Campbell, counsel to plaintiff Deacero, indicated in the Joint Status Report that Deacero opposes staying this appeal.  Id. Finally, Alan Hayden Price, counsel to defendant-intervenor Nucor Corporation indicated in the Joint Status Report that Nucor supports defendant-intervenors' motion to stay this appeal.  Id. at 3.

## IV.  **CONCLUSION**

For the above-stated reasons, defendant-intervenors respectfully request that the Court dismiss this action for lack of subject-matter jurisdiction.  In the alternative, defendant-intervenors move for an order staying further proceedings in this action pending a final decision in Deacero S.A. De C.V. and Deacero USA, Inc. v. United States, Ct. No. 12-345, including any and all appeals of that decision.

Respectfully submitted,

PAUL C. ROSENTHAL
KATHLEEN W. CANNON
R. ALAN LUBERDA
DAVID C. SMITH
BENJAMIN BLASE CARYL
**KELLEY DRYE & WARREN LLP**
3050 K Street, N.W., Suite 400
Washington, D.C.  20007
(202) 342-8400
*Counsel to Defendant-Intervenors ArcelorMittal USA LLC, Evraz Pueblo, Gerdau Ameristeel US Inc., and Keystone Consolidated Industries, Inc.*