**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE RICHARD W. GOLDBERG, SENIOR JUDGE**

| | |
|---|---|
| DEACERO S.A.P.I. DE C.V. AND DEACERO USA, INC., </br></br>    Plaintiffs, </br></br>v. </br></br>UNITED STATES, </br></br>    Defendant, </br></br>and </br></br>ARCELORMITTAL USA LLC, EVRAZ PUEBLO, GERDAU AMERISTEEL U.S. INC., KEYSTONE CONSOLIDATED INDUSTRIES, INC., AND NUCOR CORPORATION, </br></br>    Defendant-Intervenors. | ) </br>) </br>) </br>) </br>) </br>) </br>) </br>) Court No. 14-00205 </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) |

**RESPONSE IN OPPOSITION TO DEFENDANT-INTERVENORS' MOTION TO DISMSS OR, IN THE ALTERNATIVE, MOTION TO STAY PROCEEDINGS**

Plaintiffs Deacero S.A.P.I. de C.V. and Deacero USA, Inc. (collectively, "Plaintiffs" or "Deacero") respectfully request that the Court deny Defendant-Intervenors' motion to dismiss this action. Def.-Intervenors' Mot. to Dismiss or, in the Alternative, Mot. to Stay Proceedings ("Def.-Intervenors' Mot."). In this action, Deacero contests the U.S. Department of Commerce's (the "Department" or "Commerce") determination following a "sunset review" to continue the antidumping ("AD") duty order on wire rod from Mexico with respect to 4.75 mm wire rod, despite the US. International Trade Commission's ("ITC") exclusion of such rod from its

affirmative likelihood of injury determination. Because this action is the only avenue available for Deacero to challenge the Department's determination, jurisdiction must lie under either 28 U.S.C. § 1581(c) or 28 U.S.C. § 1581(i). In addition, Plaintiffs respectfully request that the Court deny Defendant-Intervenors' alternative motion to stay further proceedings in this action pending a final court decision in *Deacero S.A.P.I. de C.V. v. United States*, Ct. No. 12-345. Contrary to Defendant-Intervenors' unsupported claims, a stay would contravene the interests of Plaintiffs and Defendant, the principal parties in this case. Moreover, the notion that a stay might conserve judicial and party resources is entirely speculative. Defendant-Intervenors chose to insert themselves into this case. Having done so, they should comply with the briefing schedule agreed upon by the principal parties.

## PROCEDURAL BACKGROUND AND STATEMENT OF FACTS

### I.   Issuance of the AD Order on Wire Rod from Mexico

On October 29, 2002, the Department issued an AD order on carbon and certain alloy steel wire rod from Mexico. *Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine*, 67 Fed. Reg. 65945 (Dep't Commerce Oct. 29, 2002) ("*Order*"). The scope of the *Order* was defined to cover wire rod that is "5.00 mm or more, but less than 19.00 mm, in solid cross-sectional diameter." *Id.* at 65946.

### II.  The Department's Affirmative Circumvention Determination and Deacero's Appeal in Ct. No. 12-345

On October 1, 2012, the Department issued an affirmative circumvention determination, finding that imports of wire rod with an actual diameter of 4.75 mm to 5.00 mm ("4.75 mm rod") were within the scope of the order on wire rod from Mexico as a "minor alteration" of subject merchandise. *Carbon and Certain Alloy Steel Wire Rod from Mexico*, 77 Fed. Reg. 59892 (Dep't Commerce Oct. 1, 2012) ("*Final Circumvention Determination*").

Americas 90393513

On October 29, 2012, Deacero appealed the Department's *Final Circumvention Determination* to this Court.  *See* Complaint, *Deacero S.A.P.I. de C.V. v. United States*, Ct. No. 12-345 (Ct. Int'l Trade Oct. 29, 2012) (ECF No. 5).  ***The issue raised in Ct. No. 12-345 was whether the Department's affirmative circumvention determination is supported by substantial evidence and in accordance with law.***  On September 30, 2013, the Court held that the Department's determination "was unsupported by substantial evidence and not in accordance with law{,}" and instructed the Department to reconsider its conclusion that 4.75 mm rod constituted a minor alteration.  *Deacero S.A. de C.V. v. United States*, 942 F. Supp. 2d 1321, 1332 (Ct. Int'l Trade 2013).

On January 28, 2014, the Department issued a remand redetermination concluding that 4.75 mm wire rod is ***not*** within the scope of the *Order*.  Final Results of Redetermination Pursuant to Court Remand, Ct. No. 12-345 (Dep't Commerce Jan. 28, 2014) (ECF No. 87).  This Court sustained the Department's negative circumvention determination on December 22, 2014.  *Deacero S.A.P.I. de C.V. v. United States*, Ct. No. 12-345, Slip Op. 14-151 (Dec. 22, 2014).  The deadline for an appeal to the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") is February 20, 2015.

**III.    The Department's Determination to Continue the AD Order with Respect to 4.75 mm Rod Despite the Lack of an Affirmative Likelihood of Injury Determination and Deacero's Appeal in Ct. No. 14-205**

The Department and the ITC must conduct "sunset reviews" of an AD order every five years and the Department must revoke the order ***unless***:  (1) the Department determines that dumping would be likely to continue or recur if the order were revoked; and (2) the ITC determines that injury would be likely to continue or recur if the order were revoked.  19 U.S.C. § 1675(c) & (d)(2); 19 C.F.R. § 351.222(i)(1)(ii) & (iii).  With respect to the likelihood of injury

3

analysis, the statute requires the ITC to consider the "likely volume, price effect, and impact of *imports of subject merchandise*."  19 U.S.C. § 1675a(a) (emphasis added).

On June 3, 2013, while the litigation in Ct. No. 12-345 was ongoing, the Department and ITC initiated sunset reviews of the AD orders on wire rod from Mexico and five other countries. *Initiation of Five-Year ("Sunset") Review*, 78 Fed. Reg. 33063 (Dep't. Commerce June 3, 2013); *Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine*, 78 Fed. Reg. 33103 (Int'l Trade Comm'n June 3, 2013) (notice of institution of five-year reviews).  The Department determined that revocation of the AD duty orders on wire rod would be likely to lead to continuation or recurrence of dumping.  *Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine*, 78 Fed. Reg. 63450 (Dep't Commerce Oct. 24, 2013).

On May 30, 2014, the ITC determined that revocation of the AD orders on wire rod from Mexico, Brazil, Indonesia, Moldova, and Trinidad and Tobago would be likely to lead to continuation or recurrence of material injury.  *Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine*, 79 Fed. Reg. 35381 (Int'l Trade Comm'n June 20, 2014).  In doing so, the ITC treated 4.75 mm rod imported from Mexico as *nonsubject merchandise*, in accordance with the Department's January 28, 2014, remand redetermination in Court No. 12-345.  *See Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, Trinidad & Tobago, and Ukraine*, USITC Pub. No. 4472, Inv. Nos. 701-TA-417 and 731-TA-953, 957-959, 961, and 962 (Second Review) (June 2014) at 17 n.91 (Public Index No. 3).  As a result, the ITC *did not* make an affirmative likelihood of injury determination with respect to imports of 4.75 mm rod from Mexico within the statutory deadline for doing so.  Neither Defendant-Intervenors nor any other party appealed

4

the ITC's final sunset determination with respect to wire rod from Mexico – including the decision to treat 4.75 mm rod as nonsubject merchandise. Therefore, that determination is final.

Following the affirmative likelihood of dumping and injury determinations, and in accordance with 19 U.S.C. § 1675(c), (d)(2) and 19 C.F.R. § 351.218(f)(4), the Department issued a determination to continue the AD orders on wire rod from Mexico and the other countries on July 3, 2014. *Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, and Trinidad and Tobago*, 79 Fed. Reg. 38008 (Dep't Commerce July 3, 2014) ("*Continuation of the Order*"). Despite the lack of an affirmative ITC likelihood of injury determination with respect to 4.75 mm rod from Mexico within the statutory deadline, the Department continued the *Order* with respect to 4.75 mm rod produced and exported by Deacero. *See Continuation of the Order* at 38009.

On September 2, 2014, Deacero appealed the Department's determination to continue the AD order with respect to 4.75 mm rod to this Court. *See* Complaint, *Deacero S.A.P.I. de C.V. v. United States*, Ct. No. 14-205 (Ct. Int'l Trade Sept. 2, 2014) (ECF No. 4). ***The issue raised in Ct. No. 14-205 is whether the Department's determination to continue the AD order with respect to 4.75 mm rod, despite the ITC's express exclusion of such rod from its affirmative likelihood of injury determination, is in accordance with law.***

## ARGUMENT

**I.  THIS COURT HAS JURISDICTION TO REVIEW THIS ACTION**

In the present action, Deacero challenges the Department's determination to continue the AD order with respect to 4.75 mm rod, despite the express exclusion of such rod from the ITC's affirmative likelihood of injury determination. *Continuation of the Order* at 38009. The Court

has jurisdiction to review the Department's determination under either 28 U.S.C. § 1581(c) or 28 U.S.C. § 1581(i).

### A. Jurisdiction under 28 U.S.C. § 1581(c)

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), which vests the Court with exclusive jurisdiction over any civil action commenced under Section 516A of the Tariff Act of 1930, as amended ("Tariff Act"), codified at 19 U.S.C. § 1516a. Section 516A(a)(2)(B)(iii) of the Tariff Act states that a "final determination" by the Department under 19 U.S.C. § 1675 is a reviewable determination. 19 U.S.C. § 1516a(a)(2)(B)(iii). Here, the Department made its determination to continue the AD order with respect to 4.75 mm rod under the authority of 19 U.S.C. § 1675(c) and (d)(2). *Continuation of the Order* at 38009. Therefore, the Department's determination to continue the AD order with respect to 4.75 mm rod is a final determination by the Department that is reviewable under 28 U.S.C. § 1581(c).

Defendant-Intervenors advance two theories for their position that § 1581(c) jurisdiction is unavailable: (1) the Department's determination is not a reviewable determination under 19 U.S.C. § 1516a, and (2) Deacero lacks standing to invoke § 1581(c) jurisdiction. For the reasons discussed below, both arguments lack merit.

#### 1. The Department's determination to continue the AD order with respect to 4.75 mm rod is a final determination under 19 U.S.C. § 1675 – <u>not</u> a mere notification under 19 U.S.C. § 1677f(i)(1)

Defendant-Intervenors argue that jurisdiction under § 1581(c) is not available because the "<u>Continuation Notice</u> is not a final determination under § 1675, but is instead a notice issued under the authority of 19 U.S.C. § 1677f(i)(1)." Def.-Intervenors' Mot. at 9. Their argument, however, is belied by the statute, the Department's regulations, and the Department's explanation of the basis for its determination to continue the AD order in the *Continuation of the Order*.

6

In accordance with 19 U.S.C. § 1675(c) and (d)(2), the Department and ITC must conduct sunset reviews of an AD order every five years and the Department must revoke the order *unless*: (1) the Department determines that dumping would be likely to continue to recur if the order were revoked; and (2) the ITC determines that injury would be likely to continue or recur if the order were revoked.  Based on the results of the sunset reviews, the Department will issue a *determination* to continue the AD order or to revoke it.  In this regard, section 351.218(f)(4) of the Department's regulations state:  "the Department normally will issue its *determination* to continue an order . . . or to revoke an order . . . not later than seven days after the date of publication in the FEDERAL REGISTER of the International Trade Commission's determination concluding the sunset review." 19 C.F.R. § 351.218(f)(4) (emphasis added).

Here, in accordance with the foregoing provisions, the Department made its determination to continue the AD orders on wire rod (including with respect to 4.75 mm rod from Mexico).  *See Continuation of the Order* at 38009 ("pursuant to sections 751(c) and 751(d)(2) of the Act, the Department hereby orders the continuation of the AD orders on wire rod from Brazil, Indonesia, Mexico, Moldova, and Trinidad and Tobago and the CVD order on wire rod from Brazil").  Because the Department's determination to continue the AD order with respect to 4.75 mm rod was made under 19 U.S.C. § 1675, it is a reviewable determination under 19 U.S.C. § 1516a(a)(2)(B)(iii), and the Court has jurisdiction to review this action under 28 U.S.C. § 1581(c).

Contrary to Defendant-Intervenors' argument, the Department's determination to continue the AD order with respect to 4.75 mm rod was *not* made under 19 U.S.C. § 1677f(i)(1).  Rather, as stated by the Department explicitly, its determination to continue the AD order was made under 19 U.S.C. § 1675(c) and (d)(2).  *Continuation of the Order* at 38009.  Section

7

1677f(i)(1), which is entitled "Publication of determinations; requirements for final determinations," pertains merely to the requirement to *publish* determinations in the Federal Register. That provision states:

> Whenever . . . the administering authority or the Commission makes . . . a preliminary or final *determination* in a review under section 1675 of this title, . . . the administering authority or the Commission, as the case may be, shall publish the facts and conclusions supporting that *determination*, and shall publish notice of that determination in the Federal Register.

19 U.S.C. § 1677f(i)(1) (emphasis added). On its face, § 1677f(i) applies to the publication of a "*determination*." Thus, the Department's reference to § 1677f(i)(1) in the *Continuation of the Order* reinforces the conclusion that it was issuing a *determination* to continue the AD order. Otherwise, § 1677f(i)(1) would not have applied. As further support for this conclusion, the regulation provides that the "Department . . . will publish notice of its *determination* {to continue or revoke an order} in the FEDERAL REGISTER." 19 C.F.R. § 351.218(f)(4) (emphasis added).[1][2]

---

[1] Notably, the Department's and ITC's final determinations in the sunset reviews were published in separate Federal Register notices. *Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine*, 78 Fed. Reg. 63450 (Dep't Commerce Oct. 24, 2013); *Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine*, 79 Fed. Reg. 35381 (Int'l Trade Comm'n June 20, 2014). Thus, the Department's determination to continue the AD order with respect to 4.75 mm rod constitutes a separate "determination" that the agency was required to publish under 19 U.S.C. § 1677f(i). 19 C.F.R. § 351.218(f)(4).

[2] In a similar vein, Defendant-Intervenors argue that Deacero has failed to meet its burden to demonstrate that § 1675(c) and (2)(2) cover continuation notices. Def.-Intervenors' Mot. at 10-12. This argument misses the mark. Sections 1675(c) and (d)(2) give the Department the authority to issue a determination to continue an AD order beyond five years if the Department and the ITC make affirmative likelihood of dumping and injury determinations. That is the determination the Department made in the *Continuation of the Order*, and it is reviewable by this Court under § 1581(c). Sections 1675(c) and (d)(2) do not refer to the requirement to publish notice of the determination to continue an AD order, because that requirement is separately provided for under § 1677f(i)(1).

8

Defendant-Intervenors also contend that the court's opinion in *Canadian Wheat Bd.* is analogous, and supports the conclusion that the Court lacks jurisdiction under § 1581(c) to review Deacero's claim. Def.-Intervenors' Mot. at 14-15 (citing *Canadian Wheat Bd. v. United States*, 580 F. Supp. 2d 1350 (Ct. Int'l Trade 2008)). Contrary to their argument, *Canadian Wheat Bd.* is inapposite to the question of § 1581(c) jurisdiction in this case because it did not involve a reviewable determination under 19 U.S.C. § 1516a.

In *Canadian Wheat Bd.*, the Department revoked AD and CVD orders on wheat from Canada following a negative injury determination issued by the ITC on remand as a result of litigation before a North American Free Trade Agreement ("NAFTA") panel. *Canadian Wheat Bd.*, 580 F. Supp. 2d at 1355. In a notice of revocation of the AD/CVD orders published in the Federal Register, the Department determined that the revocation was to be prospective only. *Id.* (citing *Antidumping Duty Investigation and Countervailing Duty Investigation of Hard Red Spring Wheat from Canada: Notice of Panel Decision, Revocation of Countervailing Duty Orders and Termination of Suspension of Liquidation*, 71 Fed. Reg. 8275 (Dep't Commerce Feb. 16, 2006)). Plaintiffs challenged the Department's decision not to make the revocation effective from the orders' inception, invoking the court's jurisdiction under § 1581(i). *Id.* at 1356. The court in *Canadian Wheat Bd.* agreed with the plaintiffs that jurisdiction lied under § 1581(i), and rejected the defendant's argument that the Department's notice of revocation was a reviewable determination under 19 U.S.C. § 1516a. *Canadian Wheat Bd.*, 580 F. Supp. 2d at 1359-1362.

Unlike the *Continuation of the Order* in Deacero's appeal, the notice of revocation in *Canadian Wheat Bd.* was **not** issued to publish a determination that is reviewable under 19 U.S.C. § 1516a. As noted by the court, the legal determination at issue in *Canadian Wheat Bd.* – the effective date of revocation resulting from a negative ITC injury determination – was not

9

covered by the underlying statutory provisions. *Canadian Wheat Bd.*, 580 F. Supp. 2d at 1359 ("the statutory provisions for antidumping duty and countervailing duty investigations (as distinct from those for reviews) do not contain provisions for revocation of unfair trade orders, let alone a statutory directive to determine the effective date of the revocation"). Here, in contrast, the Department made its determination to continue the AD order with respect to 4.75 mm rod under the authority of 19 U.S.C. § 1675(c) and (d)(2). Because final determinations under § 1675 are reviewable under 19 U.S.C. § 1516a(a)(2)(B)(iii), the Court has jurisdiction to hear Deacero's appeal under § 1581(c).

For these reasons, *Canadian Wheat Bd.* is distinguishable, and does not support Defendant-Intervenors' contention that § 1581(c) jurisdiction is unavailable in this case. Furthermore, even if *Canadian Wheat Bd.* could be read to support Defendant-Intervenors' argument, that would mean that jurisdiction must lie under § 1581(i), as discussed in Section I.B, below.[3]

### 2. Deacero has standing to bring a § 1581(c) action

Defendant-Intervenors argue that Deacero lacks standing to challenge the *Continuation of the Order* under § 1581(c) because Deacero did not enter an appearance or otherwise participate in the Department's sunset review of the AD order on wire rod from Mexico. Def.-Intervenors' Mot. at 15-16. Deacero, however, is not challenging the Department's affirmative likelihood of

---

[3] Defendant-Intervenors also argue, "unlike the plaintiffs in Canadian Wheat Bd. that were challenging Commerce's revocation date and liquidation instructions (i.e., legal conclusions contained only in the challenged notice of revocation), Deacero is challenging no legal conclusion made by Commerce in the Continuation Notice, but rather a legal conclusion that occurred in the Final Circumvention Determination." Def.-Intervenors' Mot. at 15. This is incorrect. In the present appeal, Deacero is not challenging the Department's *Final Circumvention Determination* or any legal conclusion contained therein, but rather the Department's determination in the *Continuation of the Order* to continue the AD order with respect to 4.75 mm rod, despite the express exclusion of such rod from the ITC's affirmative likelihood of injury determination.

Americas 90393513

dumping determination issued in *Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine*, 78 Fed. Reg. 63450 (Dep't Commerce Oct. 24, 2013).  Rather, Deacero is challenging the Department's determination to continue the AD order with respect to 4.75 mm rod, despite the express exclusion of such rod from the ITC's affirmative likelihood of injury determination, as stated in the *Continuation of the Order*.  Deacero did not enter an appearance or submit a brief to the Department regarding this determination, because the Department does not have established procedures for an interested party to comment on determinations to continue or revoke orders following sunset reviews.  The absence of administrative procedures for interested parties to comment on such determinations weighs in favor of judicial review, not against it.  As the Mexican producer/exporter adversely affected by the Department's determination to continue the AD order with respect to 4.75 mm rod, Deacero has standing to appeal that determination.

      **B.**      **Jurisdiction under 28 U.S.C. § 1581(i)**

In the alternative, if the Court finds that jurisdiction does not lie under § 1581(c), then the Court has jurisdiction under § 1581(i).  Section 1581(i)(4) vests the Court with exclusive jurisdiction to review any civil action that concerns the "administration and enforcement" of matters referred to in § 1581(c).  Here, the determination announced by the Department in the *Continuation of the Order* to continue the AD order with respect to 4.75 mm rod, despite the express exclusion of such rod from the ITC's affirmative likelihood of injury determination, relates to the Department's administration and enforcement of sunset review determinations made under 19 U.S.C. § 1675.  Therefore, if the Court finds that it lacks jurisdiction to hear this appeal under    § 1581(c), it nevertheless has jurisdiction under § 1581(i)(4).  *See Canadian Wheat Bd.*, 580 Supp. 2d at 1361-1362 (holding that a legal conclusion contained in a

Department notice of revocation resulting from a negative ITC determination is reviewable under 28 U.S.C. § 1581(i)), *aff'd*, 641 F.3d 1344 (Fed. Cir. 2011).

Defendant-Intervenors' counterargument regarding § 1581(i) jurisdiction is untenable. According to Defendant-Intervenors, "{t}he Court's jurisdiction under section 1581(i) is not available in this case because jurisdiction pursuant to section 1581(c) has already been invoked for ***the same ultimate question*** in Deacero 12-345, providing Deacero a remedy that is not manifestly inadequate."  Def.-Intervenors' Mot. at 6 (emphasis added).  Here, Defendant-Intervenors posit that that "the proper scope of the order, as ultimately determined by Commerce, is the question at the center of both of Deacero's appeals (Ct. Nos. 12-345 and 14-205)." *Id.* at 18.  Contrary to Defendant-Intervenors' argument, ***the issues raised in Ct. Nos. 12-345 (the minor alteration circumvention appeal) and 14-205 (the present appeal) are distinct:***

- The issue in Ct. No. 12-345 is whether the Department's determination that 4.75 mm rod circumvents the AD order on wire rod from Mexico is supported by substantial evidence and otherwise in accordance with law.

- In contrast, the issue in Ct. No. 14-205 is whether the Department's determination to continue the AD order with respect to 4.75 mm rod, despite the express exclusion of such rod from the ITC's affirmative likelihood of injury determination, is in accordance with law.[4]  That is, even if 4.75 mm rod is found on appeal to the Federal Circuit to be circumventing the AD order, whether the AD order must nevertheless be revoked due to the absence of an affirmative likelihood of injury determination with respect to 4.75 mm rod within the statutory deadline.

---

[4] For this same reason, Defendant-Intervenors' reliance on the Federal Circuit's decision in *Rubber Thread* is unavailing. Def.-Intervenors' Mot. at 18-19 (citing *Trustees in Bankruptcy of N. Amer. Rubber Thread Co. v. United States*, 593 F.3d 1346 (Fed. Cir. 2010) ("*Rubber Thread*")).  "Under the analysis in Rubber Thread{,}" Defendant-Intervenors argue, "Deacero cannot invoke section 1581(i) jurisdiction in a separate action to challenge the same ultimate determination that is already the subject of an appeal properly invoking section 1581(c) jurisdiction." *Id.* at 19.  As discussed above, however, Deacero is not challenging the same determinations in Ct. Nos. 12-345 and 14-205.

12

Because the issues are distinct, the outcome in Ct. No. 12-345 will not provide any relief with respect to the issue raised in Ct. No. 14-205.

"If plaintiffs have the right to obtain review of the substantive question and to receive appropriate remedies under other jurisdictional provisions, the remedies are not manifestly inadequate." *AOC Int'l v. United States*, 17 CIT 1412, 1414-1415 (Ct. Int'l Trade 1993) (citing *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987), *cert. denied*, 484 U.S. 1041 (1988)). Here, however, if § 1581(c) jurisdiction is not available, no subsection other than § 1581(i) would be available for Deacero to obtain review of the substantive question raised in this appeal. Deacero could not challenge the Department's determination to continue the AD order with respect to 4.75 mm rod in Ct. No. 12-345, because no such decision was made in the determination at issue in Ct. No. 12-345 (*i.e.*, the *Final Circumvention Determination*). Rather, the determination at issue in this appeal was made in the *Continuation of the Order*. If the Court finds that it lacks jurisdiction under § 1581(c) to review the Department's determination in the *Continuation of the Order*, then jurisdiction must lie under § 1581(i). *See Canadian Wheat Bd.*, 580 F. Supp. 2d at 1361 (holding that, because a legal conclusion contained in a Department notice of revocation was not reviewable under § 1581(c), the conclusion was reviewable under § 1581(i)).

Lastly, Defendant-Intervenors' attempts to discredit the relevance of *Canadian Wheat Bd.* with respect to the § 1581(i) jurisdictional issue lack merit. First, Defendant-Intervenors contend that, unlike *Canadian Wheat Bd.*, "this case does not include any new legal conclusion or factual finding regarding 4.75 mm wire rod." Def.-Intervenors' Mot. at 20. To the contrary, the *Continuation of the Order* includes a new legal determination made by the Department: the determination to continue the AD order with respect to 4.75 mm rod despite the absence of an

13

affirmative likelihood of injury determination. Second, Defendant-Intervenors argue that "the court in Canadian Wheat Bd. found that the 'true nature' of the plaintiff's claim was a challenge to Commerce's liquidation instructions rather than the underlying revocation determination by the agency . . . ." *Id.* This is wrong. The court in *Canadian Wheat Bd.* expressly held that the Department made a legal conclusion in the notice of revocation, and that this conclusion was reviewable under § 1581(i). *Canadian Wheat Bd.*, 580 F. Supp. 2d at 1361. Likewise, in the present appeal, the Department made a legal determination to continue the AD order with respect to 4.75 mm rod, despite the express exclusion of such rod from the ITC's affirmative likelihood of injury determination. This determination is reviewable under § 1581(i).

## II.   FURTHER PROCEEDINGS SHOULD NOT BE STAYED

Further proceedings in this action should not be stayed. Defendant-Intervenors argue that a stay would promote judicial economy and would not impose hardship on any parties. Def.-Intervenors' Mot. at 20-22. As the moving party, Defendant-Intervenors bear the burden of demonstrating that they would suffer hardship if the case were to proceed, and they have failed to do so. On the other hand, both Plaintiffs and Defendant oppose a stay. Moreover, the notion that a stay would conserve judicial and party resources is speculative.

"{I}n reviewing a motion to stay proceedings, {the court's} 'paramount obligation' is to exercise jurisdiction timely in the case properly before it." *Gerald Metals, Inc. v. United States*, 27 F. Supp. 2d 1351, 1354 n.6 (Ct. Int'l Trade 1998) (citing *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997)). A party seeking a stay bears the burden to "make out ***a clear case of hardship or inequity in being required to go forward***, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936) (emphasis added). Thus, "a movant must make a strong

14

showing that a stay is necessary and that the disadvantageous effect on others would be clearly outweighed." *Georgetown Steel Co. v. United States*, 259 F. Supp. 2d 1344, 1347 (Ct. Int'l Trade 2003) (citations omitted).

Here, there is at least "a fair possibility" that a stay would damage the interests of Plaintiffs and Defendant, the principal parties in this case. A stay would result in delayed relief to Deacero, and could create needless delay and inefficiency for Defendant, which also opposes a stay. ECF No. 30 at 2. Because there is a "fair possibility" that a stay would disadvantage Plaintiffs and Defendant, the burden falls on Defendant-Intervenors to demonstrate that they would suffer clear hardship if proceedings in this action were to continue. However, Defendant-Intervenors have neither alleged nor suggested that they would suffer hardship if required to proceed with this action. Moreover, any litigation costs incurred by Defendant-Intervenors to prepare and file a brief in this action should have been anticipated when Defendant-Intervenors chose to insert themselves into this appeal and would not constitute a hardship. *See Tokyo Kikai Seisakusho, Ltd. v. United States*, 403 F. Supp. 2d 1287, 1293 (Ct. Int'l Trade 2005).

Defendant-Intervenors also argue that "{a} 'streamlined resolution of the chief issue' – whether 4.75 mm wire rod is covered by the order – 'will facilitate judicial economy and prevent unnecessary, duplicative briefing.'" Def.-Intervenors' Mot. at 20-21 (quoting *RHI Refractories Liaoning Co., Ltd. v. United States*, 774 F. Supp. 2d 1280, 1285 (Ct. Int'l Trade 2011)). Here, a stay should *not* be granted on this ground because the possibility that court and party resources would be conserved is entirely speculative. *See myonic GmbH v. United States*, Ct. No. 11-349, Slip Op. 11-151 (Dec. 6, 2011) (denying motion to stay where the promotion of judicial economy was speculative).

Two scenarios are possible if this action is stayed pending final resolution of Ct. No. 12-345, and – contrary to Defendant-Intervenors' claim – neither "will ensure the efficient use of the scarce time and resources of this Court and the parties to this action." Def.-Intervenors' Mot. at 21. First, the issues in Ct. No. 12-345 and Ct. No. 14-205 are distinct. Even if the Department's determination that 4.75 mm rod is circumventing the AD order (the issue in Ct. No. 12-345) were sustained on an appeal to the Federal Circuit, this would not affect Deacero's claim in this appeal that the Department's determination to continue the AD order with respect to 4.75 mm rod is contrary to law (the issue in Ct. No. 14-205).[5] Consequently, contrary to Defendant-Intervenors' argument, affirmance of the Department's *Final Circumvention Determination* would not "promote judicial efficiency" or "avoid duplicative and unnecessary proceedings."[6] Def.-Intervenors' Mot. at 6. Second, if the Court's opinion in *Deacero S.A.P.I. v. United States*, Ct. No. 12-345, Slip Op. 14-151 (Dec. 22, 2014) were upheld on appeal, the present appeal would no longer be necessary. However, it is uncertain how the Federal Circuit would rule. The present action should not be delayed based on a possibility that an appeal might be taken in a separate case and that something might occur in that appeal.

---

[5] Because the ITC's determination to treat 4.75 mm rod as nonsubject merchandise was not appealed, that determination is final and conclusive. As a result, even if 4.75 mm wire rod were ultimately considered subject merchandise, this would not change the fact that the ITC failed to make an affirmative likelihood of injury determination with respect to 4.75 mm rod within the statutory deadline.

[6] In this regard, Defendant-Intervenors' reliance on *Apex Exports* is misplaced. *See* Def.-Intervenors' Mot. at 20-21. In *Apex Exports*, the court found that a stay of proceedings pending final disposition of a separate case before the Federal Circuit would promote judicial efficiency because the Federal Circuit case concerned the same issue (*i.e.*, the legality of "zeroing" in an administrative review of an AD order). *Apex Exports v. United States*, Ct. No. 11-291, Slip Op. 12-104 at 3-4 (Aug. 6, 2012). Here, in contrast, the issues raised in Ct. Nos. 12-345 and 14-205 are distinct.

Americas 90393513

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny Defendant-Intervenors' motion to dismiss or stay this case through entry of the accompanying proposed order.

    Respectfully submitted,

    /s/ Jay C. Campbell
    David E. Bond
    Jay C. Campbell
    WHITE & CASE LLP
    701 Thirteenth Street, NW
    Washington, D.C. 20005
    Telephone:  (202) 626-3632
    Facsimile:  (202) 639-9355
    jcampbell@whitecase.com

Dated:  February 11, 2015

17

Americas 90393513

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE RICHARD W. GOLDBERG, SENIOR JUDGE

| | |
|---|---|
| DEACERO S.A.P.I. DE C.V. AND DEACERO USA, INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| UNITED STATES, | ) Court No. 14-00205 ) |
| Defendant, | ) ) ) |
| and | ) ) ) |
| ARCELORMITTAL USA LLC, EVRAZ PUEBLO, GERDAU AMERISTEEL U.S. INC., KEYSTONE CONSOLIDATED INDUSTRIES, INC., AND NUCOR CORPORATION, | ) ) ) ) ) ) |
| Defendant-Intervenors. | ) |

## **ORDER**

Upon consideration of Defendant-Intervenors' Motion to Dismiss or, in the Alternative, Motion to Stay Proceedings, and all other papers, it is hereby

ORDERED that Defendant-Intervenors' motion to dismiss is DENIED; and it is further

ORDERED that Defendant-Intervenors' motion to stay further proceedings is DENIED.

SO ORDERED.

Dated: _____   _____
New York, New York                Richard W. Goldberg, Senior Judge