UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE RICHARD GOLDBERG

| | |
|---|---|
| DEACERO S.A.P.I. DE C.V. ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Court No. 14-00205 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| ARCELORMITTAL USA LLC, EVRAZ PUEBLO, ) | |
| GERDAU AMERISTEEL U.S. INC., KEYSTONE ) | |
| CONSOLIDATED INDUSTRIES, INC., AND ) | |
| NUCOR CORPORATION, ) | |
| ) | |
| Defendant-Intervenors. ) | |

## DEFENDANT-INTERVENORS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT-INTERVENORS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY PROCEEDINGS

Defendant-intervenors ArcelorMittal USA, LLC, Evraz Pueblo, Gerdau Ameristeel U.S.

Inc., and Keystone Consolidated Industries, Inc., hereby reply to the response filed by plaintiffs

Deacero S.A.P.I. de C.V. and Deacero USA, Inc. ("Deacero Response") (ECF No. 35) to

Defendant-Intervenors' motion to dismiss or, in the alternative, motion to stay proceedings (ECF

No. 32) ("Def.-Int. Motion").

I. **DEACERO'S CONTENTION THAT THIS COURT HAS JURISDICTION UNDER SECTION 1581(c) TO REVIEW THE DEPARTMENT'S CONTINUATION NOTICE IS WITHOUT MERIT**

   A. **Deacero Has Identified No Statutory Provision Giving Rise to Section 1581(c) Jurisdiction Over Its Attempted Challenge to a Commerce Continuation Notice**

      1. **Deacero Misconstrues Commerce's Continuation Notice**

Deacero asserts that this Court has jurisdiction to hear this appeal under 28 U.S.C. § 1581(c) because the Department's determination to continue the antidumping duty order on wire rod from Mexico was made under the authority of 19 U.S.C. §§ 1675(c) and (d)(2), and not under 19 U.S.C. § 1677f(i)(1). Deacero Response at 6-10. Deacero's assertion is contrary to both the facts and the law. Notably, although Defendant, the United States, did not submit a response to the Motion to Dismiss, it also stated as follows: "Defendant, the United States, does not believe the Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1581(c)." See Joint Status Report at 2 (Dec. 3, 2014) (ECF No. 30).

As detailed in Defendant-Intervenors' Motion to Dismiss, the Department's Continuation Notice is merely a ministerial, *pro forma*, announcement of the continuation of the orders based on the Department and Commission's separate affirmative sunset determinations. It is not a final determination rendered under 19 U.S.C. § 1675 as Deacero claims. The full text of the relevant portion of Commerce's Continuation Notice reads as follows:

> As a result of the determinations by the Department and the USITC that revocation of these AD and CVD orders would likely lead to continuation or recurrence of dumping or a countervailable subsidy, and material injury to an industry in the United States, pursuant to sections 751(c) and 751(d)(2) of the Act, the Department hereby orders the continuation of the AD orders on wire rod from Brazil, Indonesia, Mexico, Moldova, and Trinidad and Tobago and the CVD order on wire rod from Brazil.

U.S. Customs and Border Protection will continue to collect cash deposits at the rates in effect at the time of entry for all imports of subject merchandise. The effective date of the continuation of these orders is the date of publication in the Federal Register of this notice of continuation. Pursuant to section 751(c)(2) of the Act, the Department intends to initiate the next five-year review of these orders not later than 30 days prior to the fifth anniversary of the effective date of continuation.

These five-year (sunset) reviews and notices are in accordance with section 751(c) of the Act and published pursuant to section 777(i)(1) of the Act and 19 CFR 351.218(f)(4).

Carbon and Certain Alloy Steel Wire Rod From Brazil, Indonesia, Mexico Moldova and Trinidad and Tobago: Continuation of Antidumping and Countervailing Duty Orders, 79 Fed. Reg. 38,008, 38,009 (Dep't Commerce July 3, 2014) ("Continuation Notice"). Deacero selectively quotes this language starting with "pursuant to sections 751(c) and 751(d)(2) . . ." in the first paragraph above to argue that the Continuation Notice was issued pursuant to 19 U.S.C. §§ 1675(c) or (d)(2). Deacero Response at 7. When read in context, however, that phrase modifies the preceding clause, "As a result of the determinations by the Department and the USITC that revocation of these AD and CVD orders would likely lead to continuation or recurrence of dumping or a countervailable subsidy, and material injury to an industry in the United States"—not the subsequent clause "the Department hereby orders the continuation of the AD orders on wire rod . . . ." See Continuation Notice, 79 Fed. Reg. 38,009. This makes sense, given that neither section 751(c) nor section 751(d)(2) of the statute: (1) reference a continuation notice; (2) provide the authority to issue a continuation notice; or (3) address how or when notification or publication of any such continuance should be executed. See 19 U.S.C. §§ 1675(c) and (d)(2); see also Def.-Int. Motion at 10-12.

Likewise, section 351.218(f)(4) of the Commerce Department's regulations, requiring the publication of a notice to continue or revoke an order following the Department's and Commission's sunset determinations, does not reference either section 751(c) or section 751(d)(2).  19 C.F.R. § 351.218(f)(4).  As the Department explains in its <u>Continuation Notice</u>, the notice is "<u>published pursuant to section 777(i)(1) of the Act</u> and 19 CFR 351.218(f)(4)." <u>Continuation Notice</u>, 79 Fed. Reg. 38,009 (emphasis added).  Thus, the <u>Continuation Notice</u> was not issued under 19 U.S.C. § 1675 as Deacero claims.  Accordingly, the <u>Continuation Notice</u> is not a reviewable determination under 19 U.S.C. § 1516a(a)(2)(B)(iii), and the Court lacks jurisdiction to review this action under section 1581(c).

Notably, even if the <u>Continuation Notice</u> were construed as being issued "pursuant to" 19 U.S.C. § 1675, it would not constitute a judicially-reviewable "determination" under that section of the statute.  Contrary to Deacero's characterization of section 1675(d)(2), that section does not create a reviewable determination.  That section states:

> (2) Five-year reviews
>
> In the case of a review conducted under subsection (c) of this section, the administering authority *shall revoke* a countervailing duty order or an antidumping duty order or finding, or terminate a suspended investigation, *unless*—
>
> (A) the administering authority makes a determination that dumping or a countervailable subsidy, as the case may be, would be likely to continue or recur, and
>
> (B) the Commission makes a determination that material injury would be likely to continue or recur as described in section 1675a(a) of this title.

19 U.S.C. § 1675(d)(2) (emphasis added).  Thus, this section requires the Department to revoke the order unless two determinations are made – an affirmative determination by the Department of the likelihood of continued dumping and an affirmative determination of the likelihood of

continued injury by the U.S. International Trade Commission ("Commission" or "ITC").  The act of either continuing or revoking the order – and therefore of publishing a notice of continuation or not – is not itself a determination because there is nothing left to determine after the Department and the ITC make their underlying determinations of the likelihood that dumping and injury will continue or recur.  19 U.S.C. § 1675(d)(2) ("the administering authority *shall revoke … unless*") (emphasis added).

Commerce did not make a reviewable "determination" when it published the Continuation Notice, but rather merely ordered the continuation of the antidumping and countervailing duty orders based on the Department's and Commission's separate affirmative sunset review determinations, and published that order pursuant to 19 U.S.C. § 1677f(i)(1).  The Continuation Notice constituted a ministerial application of the Department's regulations.  Its issuance does not require Commerce to solicit comments or gather data, as Commerce would in any proceeding culminating in a statement properly characterized as a judicially-reviewable "determination."  Any "determination" contained in the Continuation Notice was automatic and ministerial in nature; the Department had no discretion in the matter.  See, e.g., Globe Metallurgical Inc. v. United States, 31 CIT 1722, 1728, 530 F. Supp. 2d 1343, 1349 (2007) (a negative determination in a sunset review results in the "ministerial revocation of the order by Commerce"); see also Diamond Sawblades Mfrs. Coal v. United States, Ct. No. 06-00248, Slip Op 13-130, 2013 Ct. Intl. Trade LEXIS 137 at *87 (2013) ("The publication of an AD order is a purely ministerial act.") (quoting Royal Business Machines, Inc. v. United States, 507 F. Supp. 1007, 1012 (Ct. Int'l Trade 1980)). [1]

---

[1]   The Department's ministerial acts under 19 U.S.C. § 1675(d)(2) are in contrast to the Department's acts under 19 U.S.C. § 1675(d)(3) in which the Department must make a
(cont'd on next page)

Deacero cites no legal authority for its argument that the "absence of administrative procedures for interested parties to comment on such determinations weights in favor of judicial review, not against it." Deacero Response at 11.  That argument is misplaced.  The absence of notice, public hearings or briefing weighs *against* the Continuation Notice being judicially reviewable because it is an indication that no determination is being made by the agency.  See Canadian Wheat Bd. v. United States, 32 CIT 1116, 1123-24, 580 F. Supp. 2d 1350, 1359 (2008), aff'd 641 F.3d 1344 (Fed. Cir. 2011) ("Canadian Wheat Bd.").  Thus, like the revocation notice at issue in Canadian Wheat Bd., the Continuation Notice "was *not* made during any proceeding that would culminate in a determination for which judicial review is provided under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c)."  Id. (internal citations omitted) (emphasis in original).

## 2.    Deacero's Argument is Predicated on the Faulty Claim that the ITC Reached a Negative Determination on 4.75 mm Wire Rod

Deacero's attempt to defend the jurisdictional basis for its challenge to Commerce's Continuation Notice is also faulty in that Deacero misunderstands the role of the ITC and the finding it rendered in the underlying sunset review.  It is Commerce's duty to determine the scope of the investigation, and the Commission must accept that determination.  See, e.g., Cleo, Inc. v. United States, 30 CIT 1380, 1383 (2006) ("'the Commission must accept the determination of Commerce as to the scope of the imported merchandise sold at less than fair value…'") (quoting NEC Corp. v. Department of Commerce, 36 F. Supp. 2d 380, 383 (Ct. Int'l

_____

determination as to the effective date of termination of an order.  See Parkdale Int'l Ltd. v. United States, 32 CIT 1104, 1113, 581 F. Supp. 2d 1334, 1342 (2008) ("Parkdale") (finding section 1581(c) jurisdiction to appeal the effective date of revocation because the date of revocation is discretionary to the Department rather than ministerial).  Unlike section 1675(d)(3), section 1675(d)(2) contains no discretionary acts for the Department to perform.

Trade 1998)), aff'd 501 F.3d 1291 (Fed. Cir. 2007); Usinor Industeel, S.A. v. United States, 26

CIT 1402, 1405 (2002) ("It is well established… that 'Commerce has inherent authority to define

and clarify the scope of an antidumping duty investigation.'") (quoting San Francisco Candle Co.

v. United States, 206 F. Supp. 2d 1304, 1308 (Ct. Int'l Trade 2002)).  The Commission cannot

alter the scope determined by the Department.  See, e.g., Algoma Steel Corp. v. United States, 12

CIT 518, 522, 688 F. Supp. 639, 644 (1988) ("In applying {the antidumping} statute, ITC does

not look behind {Commerce}'s  determination, but accepts {Commerce}'s determination as to

which merchandise is in the class of merchandise sold at LTFV."), aff'd 865 F.2d 240 (Fed. Cir.

1989); Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350 (Fed. Cir. 2006) ("Congress

created a highly specialized system for resolving antidumping allegations, which recognizes and

exploits each participant's area of expertise.").

In this case, the Commission in fact determined that revocation of the order on wire rod

from Mexico and the other subject countries—the scope of which the Commerce Department

determines—would lead to recurrence or continuation of material injury by reason of subject

imports.  Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova,

Trinidad and Tobago, and Ukraine, USITC Pub. No. 4472, Inv. Nos. 701-TA-417 and 731-TA-

953, 957-959, 961, and 962 (Second Review) at 1, 13, and 48-49 (June 2014) ("Second Sunset

Determination").  Having no authority to determine the scope of the order, the Commission

merely cited to Commerce's scope determination in its decision and relied upon the scope as

Commerce had articulated it in the First Remand Results in Ct. No. 12-345. Id. at 17 n.91; Final

Results of Redetermination Pursuant to Court Remand, Ct. No. 12-345 (Dep't Commerce, Jan.

29, 2014) (ECF No. 87) ("First Remand Results").  With regard to Mexico, the Commission

concluded that imports of dumped wire rod within the scope of the order were likely to lead to a

continuation or recurrence of material injury, and the question of what products fall within the scope of the wire rod order to be continued as a result of the finding falls squarely and singularly within the province of Commerce to determine.

The Commission rendered an affirmative determination, not a negative determination, regarding the likely effect of imports of "wire rod" from Mexico, as defined by the Department. Deacero's claim that the "ITC did not make an affirmative likelihood of injury determination with respect to imports of 4.75 mm wire rod from Mexico" is a mischaracterization of the Commission's statement that it was not treating of 4.75 mm wire rod as "subject merchandise." Deacero Response at 4. In fact, the Commission made no separate determination of any kind as to 4.75 mm wire rod, much less a determination that imports of 4.75 mm wire rod were not likely to cause material injury to continue or recur to the domestic wire rod industry. For example, the Commission did not find that 4.75 mm wire rod was a separate domestic like product from other subject wire rod. Nor did the Commission issue a negative determination as to the effects of imports of 4.75 mm wire rod on a separate domestic industry producing 4.75 mm wire rod.[2] The only determination made by the Commission was that dumped imports of wire rod from Mexico – as defined by Commerce – would be likely to cause material injury to continue or recur if the order were revoked.

---

[2]   In fact, the Commission could not define 4.75 mm wire rod as a separate domestic like product because there is no domestic production of 4.75 mm wire rod. See Second Sunset Determination, USITC Pub. No. 4472 at I-28. As the Commission has often stated, under the statute, "The Commission does not define the domestic like product to include articles that are not domestically produced." See, e.g., Grain-Oriented Electrical Steel from Germany, Japan, and Poland, Inv. Nos. 731-TA-1233, 1234, and 1236 (Final), USITC Pub. 4491 (2014) at 10 (citing Certain Lined Paper School Supplies, Inv. Nos. 701-TA-442-443 and 731-TA-1095-1097 (Prelim.), USITC Pub. 3811 (2005) at 15, n.50; Artists' Canvas from China, Inv. No. 731-TA-1091 (Prelim.), USITC Pub. 3777 (2005) at 5-6.)); Continuation Notice, 79 Fed. Reg. 38,009.

The lack of a Commission negative determination as to 4.75 mm wire rod comports with the Department's description in the <u>Continuation Notice</u> of 4.75 mm wire rod and the appeal in <u>Deacero S.A. de C.V. v. United States</u>, Ct. No. 12-345 ("<u>Deacero I</u>"). Continuation Notice, 79 Fed. Reg. 38,009, n.4. Specifically, in the <u>Continuation Notice</u>, the Department merely set forth the scope of the orders and noted that the separate appeal of the <u>Final Circumvention Determination</u> was currently pending in <u>Deacero I</u>. <u>Carbon and Certain Alloy Steel Wire Rod from Mexico:  Affirmative Final Determination of Circumvention of the Antidumping Duty Order</u>, 77 Fed. Reg. 59,892 (Dep't Commerce, Oct. 1, 2012) ("<u>Final Circumvention Determination</u>").  In other words, the final result of <u>Deacero I</u> will determine whether 4.75 mm wire rod is circumventing the Order such that it should be treated as within the scope of the Order or not.  Thus, the Order—and the <u>Continuation Notice</u>—will only apply to 4.75 mm wire rod if there is a final court decision affirming the Department's original affirmative circumvention determination in <u>Deacero I</u>.

In this regard, this case is no different from any other case in which there is a question about whether a product that has been found to circumvent an order is within the scope.  All products that are subject to circumvention inquiries are nominally outside of the literal description of the scope until brought within scope by the anti-circumvention finding by Commerce.  <u>Target Corp. v. United States</u>, 609 F.3d 1352, 1362 (Fed. Cir. 2010) (citing <u>Wheatland Tube v. United States</u>, 161 F.3d 1365, 1370-71 (Fed. Cir. 1998)).  In each such case in which a product that was nominally outside the literal description of the scope is subsequently found to be within scope by application of the anti-circumvention provisions of the statute, the Commission's previous injury determination or affirmative sunset determinations covering in-scope merchandise would also not have nominally covered the circumventing product.  Yet those

circumventing products are properly included within scope once the an affirmative circumvention finding is final.   It is the Department's scope determination that is dispositive in this regard, and the Commission's treatment of the circumventing imports is irrelevant.

Deacero's belief that the Commission has issued a negative determination as to 4.75 mm wire rod from Mexico – as it would have had to do in order for the order to be revoked as to those products – or has the authority to alter the scope definition issued by the Department in any phase of an antidumping case is without any legal authority or factual basis in the record.   No negative Commission decision was issued on 4.75 mm wire rod and, thus, Commerce properly continued the order on "wire rod" from Mexico pursuant to the affirmative Commission finding. Any challenge to the scope of this case necessarily must be brought with respect to the Department's finding—which is precisely what Deacero has done in Deacero I.   Deacero's attempt to have a second bite of the apple by challenging a Commerce continuation notice under section 1581(c) must fail.

### B.   Deacero Lacks Standing, Having Failed to Participate in the Commerce Sunset Proceeding Below

Assuming the Court were to conclude that Deacero has section 1581(c) jurisdiction to hear Deacero's appeal in this case, that would preclude a finding of section 1581(i) jurisdiction. Trustees in Bankruptcy of N. Amer. Rubber Thread Co. v. United States, 593 F.3d 1346, 1351 (Fed. Cir. 2010) ("Rubber Thread").   Deacero would still not be entitled to relief, however, because Deacero also lacks standing to challenge the Continuation Notice having failed to participate in the sunset proceedings before the Commerce Department.   See Def.-Int. Motion at 15-16.   In Parkdale, a challenge at the Court of International Trade to a Commerce Department determination as to the effective date of revocation of an order under section 1675(d)(3) of the

statute, the court found that the plaintiff's failure to participate in the underlying Commerce sunset proceeding deprived the plaintiff of standing. 32 CIT at 1113, 581 F. Supp. 2d at 1342. Like the plaintiff in Parkdale, Deacero "was on notice of the initiation of the {Department's} sunset review{,} had the opportunity to present any and all issues regarding revocation," to the Department – including issues related to the revocation of the order as to 4.75 mm wire rod — but Deacero "chose not to be a participant." Id. at 1114, 581 F. Supp. 2d at 1342. Deacero was certainly aware of its own appeal of Commerce's treatment of 4.75 mm wire rod at all times during the sunset proceeding, and it "simply did not take the opportunity it had to address this issue." Id. Deacero cannot dispute that it failed to participate in the Commerce sunset proceeding below and, as such, Deacero has no standing to bring this action before this Court.

## II. DEACERO HAS NOT DEMONSTRATED THAT JURISDICTION UNDER SECTION 1581(i) IS PROPER BECAUSE ALTERNATIVE JURISDICTIONAL BASES ARE MANIFESTLY INADEQUATE

Deacero argues that if the Court finds that jurisdiction does not lie under section 1581(c), then this Court has jurisdiction to hear this appeal under 28 U.S.C. § 1581(i). Deacero claims that the Department's determination to continue the Order with respect to 4.75 mm wire rod "relates to the Department's administration and enforcement of sunset review determinations made under 19 U.S.C. § 1675." See Deacero Response at 11-14. This alternative argument regarding section 1581(i) jurisdiction also fails.

The Court lacks subject matter jurisdiction pursuant to section 1581(i) because Deacero has not demonstrated the unavailability of an adequate remedy pursuant to any other subsection of section 1581.[3]  Given that the ITC has no authority to determine the scope of the order to which the affirmative sunset determinations apply, the "true nature" of this appeal and of the separate appeal Deacero initiated, Deacero I, is a scope question. See, e.g., Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1355 (Fed Cir. 2006) ("mere recitation of a basis for jurisdiction, by either a party of a court, cannot be controlling... we look to the true nature of the action in the district court in determining jurisdiction of the appeal.") (internal citations omitted). As explained in section II.A.2 above, Deacero's attempt to challenge the Commerce Department's application of scope of the Mexican wire rod order to imports of 4.75 mm wire rod based on an ITC decision is simply another challenge to Commerce's anti-circumvention determination because the ITC (1) had no legal authority to alter the scope of the order, and (2) made no finding as to the likelihood that injury to the domestic wire rod industry would recur or continue with regard to the treatment of imports of 4.75 mm wire rod. See above at section I.A.2; see also Def.-Int. Motion at 16-20.

Deacero concedes that if the Court's opinion in Slip Op. 14-151 of Deacero I, Ct. No. 12-345 were upheld on appeal, "*the present appeal would no longer be necessary.*"  Deacero Response at 16 (emphasis added).  Deacero has not even attempted to argue that the potential remedy in Deacero's appeal of Commerce's Final Circumvention Determination is in any way inadequate. See Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987), cert. denied

---

[3]    Although defendant, the United States, did not file a response to defendant-intervenors' motion, in the Joint Status Report, the United States stated that it "has reservations that the Court possesses jurisdiction under 28 U.S.C. § 1581(i)." Joint Status Report at 2 (Dec. 3, 2014) (ECF No. 30).

484 U.S. 1041 (1988) ("Where another remedy is or could have been available, the party asserting § 1581(i) jurisdiction has the burden to show how that remedy would be manifestly inadequate.").

Indeed, as the Federal Circuit has recognized, where the potential remedy in an existing appeal (here, Deacero's first challenge in <u>Deacero I</u>, Ct. No. 12-345) is *more* favorable than the potential remedy in a subsequent appeal (here, Deacero's challenge in the instant case), further justification exists for finding no jurisdiction. <u>Rubber Thread</u>, 593 F.3d at 1352. If Deacero prevails in its first challenge, all entries of its 4.75 mm wire rod will be liquidated without any antidumping duties assessed, and the instant appeal is moot. If Deacero ultimately loses its circumvention appeal, then it should not be entitled to relief in this case because 4.75 mm wire rod is a part of the scope of the continued order. Both outcomes depend on the determination of the proper scope by the Department that is being decided in the appeal of <u>Deacero I</u>. Thus, Deacero's remedy under its first challenge to Commerce's circumvention determination cannot be deemed "manifestly inadequate."[4] Moreover, similar to the situation addressed by the Federal Circuit in <u>Rubber Thread</u>, there is "no question" about this Court's jurisdiction under subsection 1581(c) in <u>Deacero I</u>, or as to the Court's jurisdiction if Deacero had challenged Commerce or the ITC's underlying affirmative sunset determinations under subsection 1581(c). <u>Rubber Thread</u>, 593 F.3d at 1352.

---

[4]    Moreover, if Deacero prevails in the instant challenge, only entries after the effective revocation date of July 30, 2014 would receive duty-free treatment. <u>See</u> 19 U.S.C. § 1675(d) and 19 C.F.R. § 351.222(i)(2)(i); <u>see also</u> <u>Carbon and Certain Alloy Steel Wire Rod From Ukraine:</u> <u>Revocation of Antidumping Duty Order</u>, 79 Fed. Reg. 38,009 (Dep't Commerce July 3, 2014).

Moreover, continuation notices are not judicially-reviewable under section 1581 because they are merely ministerial, *pro forma*, administrative Federal Register notices. Because the continuation notice is merely ministerial and not substantive decision left to the discretion of Commerce, Deacero's reliance on Canadian Wheat Bd. is misplaced. In that case, the Court found it had 1581(i) jurisdiction because the revocation notice at issue contained a legal conclusion—the effective revocation date—not included in any other determination. 32 CIT at 1123-24, 580 F. Supp. 2d 1360. Unlike a revocation under section 1675(d)(3) – which expressly contains a determination as to the effective date of revocation – a continuation notice under 19 U.S.C. § 1677f(i)(1), that is made as a result of the required affirmative determinations listed in section 1675(d)(2), includes no such requirement. Deacero has not cited to any case in which the Courts have found otherwise. Further, as Deacero notes, Canadian Wheat Bd. concerned a revocation resulting from a negative injury determination issued by the Commission, not a continuation notice resulting from an affirmative sunset review determination. See Deacero Response at 9; Canadian Wheat Bd.,

32 CIT at  1118-19, 580 F. Supp. 2d at 1355.

The courts have made clear that subsection 1581(i) is not intended to "to create any new causes of action not found on other provisions of law." Nat'l Corn Growers Ass'n v. Baker, 840 F.2d 1547, 1557 (Fed. Cir. 1988) (citations omitted). The only provision in section 777 of the Tariff Act of 1930 that is mentioned in 28 U.S.C. § 1581 is section 777(c)(2) of the Tariff Act of 1930, 19 U.S.C. § 1677f(c)(2), regarding the disclosure of certain proprietary information under court order. 28 U.S.C. § 1581(f). Given that 28 U.S.C. § 1581 explicitly permits appeals of determinations under 19 U.S.C. § 1677f(c)(2), but makes no mention of actions related to 19 U.S.C. § 1677f(i)(1), the Court should conclude that Congress deliberately did not make

Commerce Department continuation notices judicially-reviewable determinations covered in 28 U.S.C. § 1581.  See Lane v. Pena, 518 U.S. 187, 192-194 (1996) (finding a lack of express waiver of sovereign immunity against monetary damages under one subsection of statute by comparing its text to other subsections of the same statute that "illustrate{d} Congress' ability to craft a clear waiver").  Had Congress wished to make all actions related to 19 U.S.C. § 1677f judicially-reviewable, it could easily have so stated in 28 U.S.C. § 1581(f).  See id. at 193 ("Had Congress wished to make Title VI remedies available broadly for *all* § 504(a) violations, it could easily have used language in § 505(a)(2) that is as sweeping as the "any complaint" language contained in § 505(a)(1).") (emphasis in original).  Because Congress did not do so in subsection 1581(f) or anywhere else in section 1581, subsection 1581(i) cannot be expanded to include Commerce Department continuation notices issued under 19 U.S.C. § 1677f(i)(1) among potential civil actions against the United States.

## III.   NOW THAT AN APPEAL OF THE COURT'S DECISION IN *DEACERO I* HAS BEEN FILED, IT IS NOT SPECULATIVE THAT A STAY WOULD CONSERVE RESOURCES

To the extent that the Court does not dismiss this appeal for lack of jurisdiction, it should stay this appeal pending entry of a final judgment in the appeal defendant and defendant-intervenors have filed in Deacero I.  Deacero's argument that "the notion that a stay would conserve judicial and party resources is speculative" is wrong.  Deacero's argument relies on Myonic GmbH v. United States ("Myonic"), in which the Court found that the promotion of judicial economy was speculative because there was no pending Federal Circuit appeal related to the issue for decision in the case at hand.  Myonic, Ct. No. 11-349, Slip Op. 11-151 at 2-4 (Ct. Int'l Trade, Dec. 6, 2011).  Since Deacero filed its response, both defendant United States and defendant-intervenors have appealed the Court's decision in Deacero I to the U.S. Court of

Appeals for the Federal Circuit.  See Deacero S.A. de C.V. v. United States, Ct. No. 15-1362, Notice of Docketing (Fed. Cir. Feb. 23, 2015).  Thus, unlike the facts of Myonic case, there is no speculation here as to whether there a pending case deals with the same ultimate legal question—much less "two cases involve{ing} common legal or factual threads"—as is true here. See RHI Refractories Liaoning Co. v. United States, 774 F. Supp. 2d 1280, 1283 (Ct. Int'l Trade 2011).

Deacero's further argument that defendant-intervenors' request for a stay in this matter is inappropriate because the views of defendant-intervenors—the domestic producers of wire rod who filed the petition that led to the antidumping order in question and that fully participated in all aspects of the sunset review before both agencies—are of little or no importance must be rejected.  Deacero Response at 2 and 15.  This appeal directly relates to the domestic producers' right to trade relief from dumped imports under the antidumping statute.  As the Federal Circuit has recognized, domestic producers in a trade action have a significant commercial interest in, and derive a direct competitive benefit from, the proper administration and enforcement of the antidumping laws, including the proper assessment of antidumping duties on subject merchandise.  See, e.g., Zenith Radio Corp. v. United States, 710 F.2d 806, 810 (Fed. Cir. 1983); SSAB N. Am. Div. v. U.S. Bureau of Customs & Border Prot., 32 CIT 795, 799-800, 571 F. Supp. 2d 1347, 1352 (2008).  Given the direct effects of the outcome of this appeal on the commercial interests of the domestic producers, Deacero's attempt to have the Court ignore the views of the domestic producers who are interested parties to this appeal must be rejected.

## IV.    CONCLUSION

For the reasons stated above and in defendant-intervenors' January 16, 2015 Memorandum in Support of motion to Dismiss or, In the Alternative, Motion to Stay

Proceedings, the Court should dismiss this action for lack of subject-matter jurisdiction.  In the alternative, the Court should  stay further proceedings in this action pending a final decision in Deacero S.A. de C.V. and Deacero USA, Inc. v. United States, Ct. No. 12-345, including any and all appeals of that decision.

Respectfully submitted,

PAUL C. ROSENTHAL
KATHLEEN W. CANNON
R. ALAN LUBERDA
DAVID C. SMITH
BENJAMIN BLASE CARYL
**KELLEY DRYE & WARREN LLP**
3050 K Street, N.W., Suite 400
Washington, D.C.  20007
 (202) 342-8400

*Counsel to Defendant-Intervenors ArcelorMittal*
*USA LLC, Evraz Pueblo, Gerdau Ameristeel US*
*Inc., and Keystone Consolidated Industries, Inc.*

March 2, 2015