Slip Op. 15-87

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| DEACERO S.A.P.I. DE C.V. AND DEACERO USA, INC., <br><br>                   Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br>                 Defendant, <br><br>  and <br><br> ARCELORMITTAL USA LLC, EVRAZ PUEBLO, GERDAU AMERISTEEL U.S. INC., KEYSTONE CONSOLIDATED INDUSTRIES, INC., AND NUCOR CORPORATION <br><br>                 Defendant-Intervenors. | Before: Richard W. Goldberg, Senior Judge <br> Court No. 14-00205 |

**OPINION AND ORDER**

[The court stays the case.]

Dated:  August 17, 2015

*David E. Bond*, White & Case LLP, of Washington, DC, argued for plaintiffs.  With him on the brief was *Jay C. Campbell*.

*Jane C. Dempsey*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendants.  Present at argument was *David W. Richardson*, Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce.

*Paul C. Rosenthal*, Kelley Drye & Warren LLP, of Washington, DC, argued for defendant-intervenors ArcelorMittal USA LLC, Evraz Pueblo, Gerdau Ameristeel U.S. Inc., and Keystone Consolidated Industries, Inc.  With him on the brief were *Kathleen W. Cannon*, *R. Alan Luberda*, *David C. Smith*, *Benjamin Blase Caryl*.

Goldberg, Senior Judge: Plaintiffs Deacero S.A. de C.V. and Deacero USA, Inc. (collectively, "Deacero") take issue with the U.S. Department of Commerce's ("Commerce") continuation of the antidumping duty order on carbon and certain alloy steel wire rod from Mexico following five-year review.  *Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, and Trinidad and Tobago*, 79 Fed. Reg. 38,008 (Dep't Commerce July 3, 2014) (continuation of antidumping & countervailing duty orders) ("Continuation Notice").  Deacero claims that, in the Continuation Notice, Commerce was required by law to expressly confine the scope of the antidumping duty order to wire rod with an actual diameter above 5.00 mm.  Complaint 7–8, ECF No. 4.

The court does not today reach the merits of Deacero's claim but instead addresses a Motion to Dismiss or, in The Alternative, Motion to Stay Proceedings, ECF No. 32 filed by Defendant-Intervenors Arcelormittal USA LLC, Evraz Pueblo, Gerdau Ameristeel U.S. Inc., and Keystone Consolidated Industries, Inc. (collectively "Arcelormittal").  In the main, Arcelormittal moves for dismissal under USCIT Rule 12(b)(1), arguing that the court lacks jurisdiction to hear Deacero's claim under 28 U.S.C. § 1581(c) (2012) and § 1581(i)(4), the two jurisdictional bases asserted by Deacero.  Alternatively, Arcelormittal asks that the court stay this case pending the Federal Circuit's decision in the appeal of a related lawsuit.  The court holds that it has jurisdiction under § 1581(c) but that a stay is proper.

## BACKGROUND

Because the court opts to delay the merits of this case with a stay, a brief background will do for the time being.  Both this case and the Federal Circuit appeal that justifies the stay arise from the same order imposing antidumping duties on carbon and certain alloy steel wire rod from Mexico.  *Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico,*

*Moldova, Trinidad and Tobago, and Ukraine*, 67 Fed. Reg. 65,945 (Dep't Commerce Oct. 29,

2002) (notice of antidumping duty orders) (the "Order").  Originally, the Order was bound in

scope to cover wire rod "5.00 mm or more, but less than 19.00 mm, in solid cross-sectional

diameter."  *Id.* at 65,946.  But Commerce later used its circumvention procedures to bring 4.75-

to-5.00-mm wire rod within the Order's scope.  *Carbon and Certain Alloy Steel Wire Rod from*

*Mexico*, 77 Fed. Reg. 59,892, 59,893 (Dep't Commerce Oct. 1, 2012) (final affirm.

circumvention determination) (the "Circumvention Determination") and accompanying I&D

Mem. at Scope of the Circumvention Inquiry.

At that point, Deacero filed suit challenging Commerce's Circumvention Determination

(the same suit whose eventual judgment Deacero has appealed, justifying a stay of the instant

proceedings).  Complaint, *Deacero S.A. de C.V. v. United States* (*Deacero I*), 37 CIT __, 942 F.

Supp. 2d 1321 (2012) (No. 12-345), ECF No. 5.  In response, this court enjoined U.S. Customs

and Border Protection ("Customs") from liquidating entries of wire rod exported by Deacero

with a diameter between 4.75 and 5.00 mm.  Order Granting Prelim. Inj. to Enjoin Liquidation of

Certain Entries, *Deacero I*, 37 CIT __, 942 F. Supp. 2d 1321 (2012) (No. 12-345), ECF No. 12

("Order Enjoining Liquidation").  The court's preliminary injunction is still in place today.

Before the court had a chance to rule on Deacero's Circumvention Determination claim,

Commerce and the U.S. International Trade Commission (the "ITC" or "Commission") began a

five-year review of the Order.  *Initiation of Five-Year ("Sunset") Review*, 78 Fed. Reg. 33,063

(Dep't Commerce June 3, 2013).  The statute provides that every five years, "[Commerce] and

the Commission shall conduct a review to determine . . . whether revocation of

the . . . antidumping duty order . . . would be likely to lead to continuation or recurrence of

dumping . . .  and of material injury."  19 U.S.C. § 1675(c)(1).  Commerce goes first,

determining whether dumping is likely to recur, and the ITC follows by making the same

determination only with respect to material injury.  *Id.* §§ 1675(c)(5)(A), 1675a(a), (c).  Upon

completion of both agencies' review obligations, the law states that "[Commerce] shall

revoke . . . an antidumping duty order . . . , unless (A) [Commerce] makes a determination that

dumping . . . would be likely to continue or recur, and (B) the Commission makes a

determination that material injury would be likely to continue or recur."  *Id.* § 1675(d)(2).

After Commerce and the ITC had begun the five-year review, but before the agencies had

reached their respective dumping and injury determinations, this court reached a decision on

Deacero's appeal of Commerce's Circumvention Determination.  On September 30, 2013, the

court held that Commerce's decision to include 4.75 mm wire rod within the scope of the Order

"was unsupported by substantial evidence and not in accordance with law" and remanded to

Commerce with instructions to "reconsider its finding that 4.75 mm wire rod is circumventing

the Order."  *Deacero I*, 37 CIT at __, 942 F. Supp. 2d at 1332.

On October 17, 2013, during the middle of the court's remand, Commerce completed its

five-year dumping review.  *Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia,*

*Mexico, Moldova, Trinidad and Tobago, and Ukraine*, 78 Fed. Reg. 63,450 (Dep't Commerce

Oct. 24, 2013) (final five-year dumping results) ("Five-Year Dumping Review").  Commerce did

so without the input of Deacero, because Deacero did not participate in Commerce's review

proceedings.  *Id.*  Commerce decided that "revocation of [the Order] would be likely to lead to

continuation or recurrence of dumping."  *Id.*  In so deciding, Commerce did not mention

*Deacero I* or revisit the Order's proper scope in light of the opinion.  *See id.* and accompanying

I&D Mem. at Scope of the Orders.

Commerce did, however, address *Deacero I*'s effect on the scope of the Order in the

remand results dated January 29, 2014. Final Results of Redetermination Pursuant to Ct.

Remand, *Deacero I*, 942 F. Supp. 2d 1321 (No. 12-345), ECF No. 87-1 ("First Remand

Results"). In the results, Commerce recanted the position it had taken in the Circumvention

Determination that 4.75 mm wire rod was within the Order's scope—but only "under respectful

protect." *Id.* at 2.[1] The propriety of Commerce's initial Circumvention Determination is now

before the Federal Circuit on appeal (hereinafter the "Federal Circuit appeal"). *See* Notice of

Docketing, *Deacero S.A. de C.V. v. United States*, No. 15-1362 (Fed. Cir. Feb. 23, 2015).

After Commerce announced the First Remand Results in the Circumvention

Determination litigation, the ITC completed its five-year injury review of the initial antidumping

Order. This time, Deacero participated. *Carbon and Certain Alloy Steel Wire Rod from Brazil,

Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine*, 79 Fed. Reg. 35,381 (Int'l

Trade Comm'n June 20, 2014) (final five-year injury results) ("Five-Year Injury Review") and

accompanying Views of the Comm'n at 4. On June 16, 2014, the ITC decided that "revocation

of . . . [the Order] would be likely to lead to continuation or recurrence of material injury." *Id.*

In so deciding, the ITC treated wire rod below 5.00 mm as nonsubject imports (i.e., merchandise

---

[1] Commerce's reasoning in the First Remand Results led to a second remand. In the First Remand Results, Commerce stated that it was bound by *Deacero I* to conclude that 4.75 mm wire rod was commercially available before the Order was issued, because the court had factually found as much. *Id.* at 4, 19. On this basis, Commerce had no alternative but to conclude that reducing wire rod's diameter to 4.75 mm wire rod was not a minor alteration. *Id.* And this conclusion in turn compelled Commerce to determine that 4.75 mm wire rod was not circumventing the Order, and was therefore outside the Order's scope. *Id.*

The court remanded again to correct Commerce's misconception that the court had made a factual finding that 4.75 mm wire rod was commercially available before the Order was issued. *Deacero S.A.P.I. de C.V. v. United States*, Slip Op. 14-99, 2014 WL 4244349, at *6–7 (Aug. 28, 2014). The court clarified that it had made no factual findings in its opinion; rather, the court simply invoked Commerce's own prior commercial availability finding. *Id.* The court afforded Commerce the opportunity to revisit commercial availability on a second remand. *Id.* Commerce declined to do so however, so the court sustained the negative circumvention determination from the First Remand Results. *Deacero S.A.P.I. de C.V. v. United States*, Slip Op. 14-151, 2014 WL 7250688 (Dec. 22, 2014).

not subject to, or outside the scope of, the Order).  Five-Year Injury Review and accompanying

Views of the Comm'n at 17 n.91; *see id.* at 7–8.  The ITC explained,

> Domestic interested parties[, who are also Defendant-Intervenors in the instant
> case,] argue that the Commission should treat Deacero's shipments of 4.75 mm
> wire rod to the United States as subject imports.  We are under no obligation to treat
> Deacero's 4.75 mm shipments of wire rod to the United States as subject imports
> because, as explained in section II of this opinion, 4.75 mm wire rod was not
> originally within the scope of these reviews and the latest Commerce decision does
> not include 4.75 mm wire rod within the scope.  Notwithstanding that it is
> nonsubject merchandise, Deacero's shipments to the United States of 4.75 mm wire
> rod, which it acknowledges is largely substitutable for subject merchandise, shows
> a continued interest in the U.S. market.

*Id.* at 17 n.91 (citations omitted)

On June 27, 2014, because both Commerce and the ITC had reached affirmative five-

year determinations, Commerce continued the Order as mandated by 19 U.S.C. § 1675(d)(2).

Continuation Notice at 38,009.  Commerce did not bind the continued Order's scope to wire rod

above 5.00 mm in the Continuation Notice or revoke the Order as to wire rod below 5.00 mm.

*Id.* at 38,008–09.[2]

Deacero responded to the Continuation Notice by filing this lawsuit on September 2,

2014.  In the new filing Deacero claims that, in the Continuation Notice, Commerce was required

by law to expressly confine the scope of the Order to wire rod above 5.00 mm—and to revoke

the Order as to sub-5.00 mm wire rod.  Complaint 1–2, 8.  Deacero reasons that the ITC treated

wire rod below 5.00 mm as outside the scope of the Order.  *See id.*  Therefore, under

---

[2] Actually, the Continuation Notice does not even mention Commerce's loss before this court in *Deacero I*, or its subsequent redetermination that 4.75 mm wire rod was not circumventing the Order.  *Id.* at 38,008–09.  Instead, Commerce breezily recounted the initial (but by then invalidated) Circumvention Determination.  Then, in a footnote, Commerce stated that "Deacero appealed [Commerce's Circumvention Determination], and [that] the case [wa]s currently pending."  *Id.* at 38,009 n.4.  In the future, Commerce might chronicle the relevant proceedings before this court with more rigorous detail—whether Commerce finds those proceedings convenient or not.

§ 1675(d)(2) Commerce had to expressly confine the scope of, and partially revoke, the Order.
*Id.*

Now before the court is Defendant-Intervor Arcelormittal's Motion to Dismiss or Stay.

Arcelormittal contends that the court lacks jurisdiction to consider Deacero's claim under 28

U.S.C. § 1581(c) and § 1581(i)(4), the two jurisdictional bases asserted by Deacero.  In the

alternative, Arcelormittal asks that the court stay this case pending decision in the Federal Circuit

appeal.

## JURISDICTION AND STANDARD OF REVIEW

A jurisdictional challenge raises a "threshold inquiry."  *See Hartford Fire Ins. Co. v.*

*United States*, 31 CIT 1281, 1285, 507 F. Supp. 2d 1331, 1334 (2007).  When jurisdiction is

challenged pursuant to USCIT Rule 12(b)(1), the plaintiff bears the burden of establishing

jurisdictional basis by a preponderance of the evidence.  *See Toxgon Corp. v. BNFL, Inc.*, 312

F.3d 1379, 1383 (Fed. Cir. 2002).  The plaintiff bears the same burden with respect to 12(b)(1)

challenges to statutory standing, an element of jurisdiction.  *See Ad Hoc Utils. Grp. v. United*

*States*, 33 CIT 741, 746, 625 F. Supp. 2d 1330, 1336 (2009).

"The decision of '[w]hen and how to stay a proceeding is within the sound discretion of

the trial court.'"  *Apex Exps. v. United States*, Slip Op. 12-104, 2012 WL 3205488, at *1 (2012)

(quoting *Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997).

"A court may properly determine that it is efficient for its own docket and the fairest course for

the parties to enter a stay of an action before it, pending resolution of independent proceedings

which bear upon the case."  *Diamond Sawblades Mfrs. Coal. v. United States*, 34 CIT 404, 406

(2010).  "However, the party moving for a stay 'must make out a clear case of hardship or

inequity in being required to go forward, if there is even a fair possibility that the stay for which

he prays will work damage to some one else.'"  *Id.* (quoting *Landis v. North American Co.*, 299

U.S. 248, 255 (1936)).

## DISCUSSION

Arcelormittal contends that neither 28 U.S.C. § 1581(c) nor § 1581(i)(4) vests the court

with jurisdiction to hear Deacero's claim.  By way of reminder, Deacero claims that the ITC's

treatment of scope during the five-year injury review compelled Commerce to expressly confine

the scope of the Order to wire rod above 5.00 mm in the Continuation Notice.  Arcelormittal

argues that the courts lacks § 1581(c) jurisdiction for two reasons: (1) Deacero has no standing to

sue under § 1581(c) because it did not sufficiently participate in Commerce and the ITC's five-

year review, and (2) Commerce's Continuation Notice is not reviewable under § 1581(c) because

it is not a final determination under 19 U.S.C. § 1675.  Turning to 28 U.S.C. § 1581(i)(4),

Arcelormittal maintains that jurisdiction is unavailable under that provision because Commerce's

continuation of the Order is ministerial and cannot be contested.  Arcelormittal also argues that

§ 1581(i)(4) jurisdiction, which is residual, is precluded by jurisdiction over the Federal Circuit

appeal.  Finally, in the alternative to its jurisdictional arguments, Arcelormittal requests that the

court stay this case pending the Federal Circuit appeal.

The court holds that it has § 1581(c) jurisdiction over Deacero's claim.  However, the

court also holds that a stay pending decision in the Federal Circuit appeal is appropriate.  There

is no possibility that a stay will damage Deacero's or the United States' interests, and a stay

promotes judicial economy because this case will not go forward if the Federal Circuit affirms

judgment in the Circumvention Determination appeal.

## I.      The Court Has Jurisdiction Under 28 U.S.C. § 1581(c)

Arcelormittal contests § 1581(c) jurisdiction on grounds that Deacero's decision not to

participate in Commerce's five-year injury determination deprives Deacero of statutory standing

to sue over Commerce's subsequent Continuation Notice.  Arcelormittal also argues that the

court lacks § 1581(c) jurisdiction because the Continuation Notice is not a final determination

under § 1675.  The court disagrees with both arguments.

Section 1581(c) vests the court with "exclusive jurisdiction of any civil action

commenced under section 516A of the Tariff Act of 1930."  Section 516A, codified at 19 U.S.C.

§ 1516a, allows an "interested party who is a party to the proceeding in connection with which

the matter arises" to bring a civil cause of action contesting "[a] final determination . . . by

[Commerce] or the Commission under section 1675 of this title."  19 U.S.C. § 1516a(a)(2)(A),

(B)(iii).  Commerce's regulations define the term "party to the proceeding" as "any interested

party that actively participates, through written submissions of factual information or written

argument, in a segment of a proceeding."  19 C.F.R. § 351.102(b)(36).

The court first considers and rejects Arcelormittal's contention that Deacero did not

sufficiently participate in the five-year review to count as a "party to the proceeding."  According

to Arcelormittal, Deacero's failure to participate in Commerce's portion of the five-year review

(the dumping determination) is fatal to Deacero's statutory standing.  But this argument fails

because it misrecognizes the nature of Deacero's claim.  Deacero is not contesting Commerce's

five-year dumping determination.  Complaint 1–2, 7–8.  Rather, Deacero is challenging

Commerce's Continuation Notice, on grounds that it is incompatible with the ITC's five-year

injury determination.  *Id.*  In the five-year injury determination, the ITC treated wire rod below

5.00 mm as outside the scope of the Order.  Five-Year Injury Review and accompanying Views

of the Comm'n at 17 n.91.  Deacero claims that, rather than continuing the Order in full,

Commerce was required to expressly confine the scope to wire rod above 5.00 mm.  Complaint

7–8.

Given the nature of Deacero's claim, Deacero's participation or nonparticipation in

Commerce's five-year dumping determination is irrelevant to the issue of statutory standing.

Deacero's claim is predicated on a disjunction between the ITC's five-year injury determination

on the one hand and Commerce's Continuation Notice on the other.  Commerce's separate five-

year dumping determination is not the "segment of [the] proceeding" that Deacero needed to

"actively participate[]" in to preserve the present claim.  19 C.F.R. § 351.102(b)(36).

And Deacero did "actively participate[]" in the "segment[s] of [the] proceeding" relevant

to Deacero's claim—at least to the extent that it had the opportunity.  *Id.*  As Arcelormittal

concedes, Deacero participated in the ITC's five-year injury determination, the proceeding that,

according to Deacero, mismatches Commerce's Continuation Notice.  Mem. of Def.-Intervenors

in Support of Their Mot. to Dismiss or, in Alternative, Mot. to Stay Proceedings 13, ECF No 32

("Def.-Intervenors' Br.").  There was no procedure for Deacero to participate in the continuation

of the Order (or subsequent publication of the Continuation Notice).  *Compare* 19 U.S.C.

§ 1675(c)(2) (providing notice and a means for interested parties to participate in five-year

reviews)*, with id.* § 1675(d)(2) (providing no such means for participating in continuations), *and*

*id.* § 1677f(i)(1) (same).  Deacero's participation was sufficient to vest it with statutory standing

to pursue this § 1581(c) claim.

The sole case that Arcelormittal cites in support of its argument that Deacero had to

participate in Commerce's five-year dumping determination is *Parkdale International Ltd. v.*

*United States*, 32 CIT 1104, 581 F. Supp. 2d 1334 (2008).  In *Parkdale*, Commerce issued a

revocation notice dismantling an antidumping order following a five-year review.  The

revocation notice contained a controversial effective revocation date.  *Id.* at 1106, 581 F. Supp.

2d at 1336.  Parkdale sued on the revocation notice claiming that Commerce should have chosen

an earlier revocation date.  But Parkdale filed suit too late to invoke jurisdiction under § 1581(c),

and had no choice but to try to proceed under 28 U.S.C. § 1581(i)(4).  *Id.* at 1107–09, 581 F.

Supp. 2d at 1337–38.  In order to do so, Parkdale needed to satisfy § 1581(i)(4)'s prerequisite

that jurisdiction is not and could not have been available under another subsection of § 1581,

including § 1581(c).  *Id.* at 1111, 581 F. Supp. 2d at 1340.[3]

        The court held that Parkdale could not satisfy § 1581(i)(4) unavailability prerequisite,

because "Commerce's Revocation Notice was a final determination pursuant to § 1516a

reviewable under § 1581(c)."  *Id.* at 1111, 581 F. Supp. 2d at 1340.  In so holding, the court

rejected Parkdale's argument that insisting on § 1581(c) jurisdiction (instead of § 1581(i)(4)

jurisdiction) would leave Parkdale without an opportunity for judicial review.  *Id.* at 1113–14,

581 F. Supp. 2d at 1342.  The court reasoned that Parkdale could have had an opportunity for

judicial review under § 1581(c) if Parkdale had participated in the underlying five-year review

(which Parkdale did not do: neither during Commerce's five-year dumping review nor during the

ITC's five-year injury review).  *Id.*  Arcelormittal extrapolates from *Parkdale* the rule that a

plaintiff cannot invoke § 1581(c) jurisdiction to challenge any aspect of a revocation or

continuation notice unless the plaintiff participated in Commerce's five-year dumping review.

        This is not the lesson of *Parkdale*.  As noted, Parkdale never asserted jurisdiction under

§ 1581(c) and could not have done so because the statutory deadline for doing so had passed.  *Id.*

---

[3] *See also Int'l Custom Prods. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006) ("[Section 1581(i)(4)] may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate.").

at 1107–09, 581 F. Supp. 2d at 1337–38.  Because *Parkdale* was not a § 1581(c) case, the court

never had cause to address whether Parkdale's failure to participate in Commerce's five-year

review would actually keep Parkdale from suing under § 1581(c).  *See id.* at 1111–14, 581 F.

Supp. 2d at 1340–43.  That is, the court did not say whether or not, had Parkdale filed suit within

§ 1581(c)'s time limits, Parkdale's suit would have been dismissed on the basis of Parkdale's

failure to participate in the five-year review.  The court only held that § 1581(i)(4) unavailability

prerequisite was not satisfied because Parkdale could have participated in the five-year review,

and clearly could have sued under § 1581(c) had it done so.  *Id.* at 1113–14, 581 F. Supp. 2d at

1342.  Because the *Parkdale* court never held on § 1581(c)'s participation requirement,

Arcelormittal cannot derive from *Parkdale* a rule showing Deacero's participation in the five-

year review to be insufficient.[4]  Deacero's participation in the ITC's five-year injury review and

beyond was sufficient to vest it with statutory standing to pursue its claim.

    Nor is the court convinced by Arcelormittal's second argument, that the Continuation

Notice is not reviewable under § 1581(c) because it is not a final determination under § 1675.

Statutory context shows why the Continuation Notice must be a final determination under

§ 1675.  Looking first generally at 19 U.S.C. § 1516a, Congress therein provided a

comprehensive scheme for judicial review of determinations in antidumping and countervailing

duty proceedings.  Included in this scheme is judicial oversight of final determinations that

---

[4] Even had *Parkdale* set forth a rule on § 1581(c)'s participation requirement, it would not govern this case, because Parkdale's claim is very different from Deacero's.  Parkdale claimed that the effective date of revocation was too late.  *Id.* at 1106, 581 F. Supp. 2d at 1336.  Parkdale was on notice of this putative claim at the outset of the five-year review:  Parkdale sought a revocation from Commerce, and the statute affords Commerce discretion to set the effective revocation date.  *Id.* at 1110–11, 581 F. Supp. 2d at 1340 (citing 19 U.S.C. § 1675(d)(3)).  So Parkdale could have alerted Commerce to its claim at some point during the five-year review.

    In this case, Deacero did not have the same degree of notice of its putative claim at the outset of the five-year review.  Because Commerce had not yet issued the First Remand Results in response to *Deacero I*, Deacero did not have a clear basis for believing that the ITC might treat 4.75 mm wire rod as outside the Order's scope in the ITC's five-year injury determination.  *Compare* Five-Year Dumping Review (issued October 24, 2013), *with* First Remand Results (issued January 29, 2014).

Commerce reaches when conducting five-year reviews of antidumping duty orders under § 1675.

19 U.S.C. § 1516a(a)(2)(B)(iii).  Commerce's five-year review of an antidumping duty order

concludes when Commerce either revokes or continues an order under § 1675(d)(2).  When

Commerce revokes or continues an order, 19 U.S.C. § 1677f(i)(1) provides that Commerce

"shall publish the facts and conclusions supporting th[e] determination, and shall publish notice

of th[e] determination"—in other words, Commerce shall publish a revocation or continuation

notice—"in the Federal Register."  After publication of the notice, there are no further actions for

Commerce to take.  *See id.* §§ 1675(d)(2), 1677f(i)(1).  Because publication of the revocation or

continuation notice is Commerce's last step in five-year review, it also culminates Commerce's

final determination under § 1675.

Analysis of particular statutory provisions also proves the point.  Looking again to

§ 1677f(i)(1), that subsection requires publication of "facts and conclusions supporting" a "final

determination . . . under section 1675."  Commerce stated that it published the Continuation

Notice "pursuant to" § 1677f(i)(1),  so it follows that the Continuation Notice is a final

determination under § 1675.[5]  Similarly, § 1675(c)(3) provides that "[i]f no interested party

responds to the notice of initiation [of a five-year review, Commerce] shall issue a final

determination . . . revoking the order."  A revocation following no response by interested parties

is therefore unambiguously a final determination, and furthermore one reviewable under

§ 1581(c).  *See* 19 U.S.C. § 1516a(a)(1)(D).  It would make no sense for Congress to allow the

---

[5] Arcelormittal attempts to invoke § 1677f(i)(1) in its favor by arguing that Deacero is really just challenging the ministerial act of publishing the Continuation Notice as it is governed by the provision.  Because § 1581(c) jurisdiction is only available over determinations under § 1675, and § 1675 does not address publication, the court must lack § 1581(c) jurisdiction.  The court rejects this argument as poorly premised.  Deacero is not challenging the manner in which Commerce published the Continuation Notice as governed by § 1677f(i)(1).  Rather, Deacero is challenging the Continuation Notice as a final determination to continue the Order without reducing its scope—a matter very much within the reach of § 1675.  *See* 28 U.S.C. § 1675(d)(2).

court to review the terms of a revocation upon which no interested party cares to comment, but

not to review a continuation that the interested parties dispute.

In rebuttal, Arcelormittal analogizes to *Canadian Wheat Board v. United States*, 32 CIT

1116, 580 F. Supp. 2d 1350 (2008), but the analogy is unavailing.  In *Canadian Wheat Board*,

Commerce revoked an antidumping duty order after the ITC reversed the injury finding from the

original antidumping investigation in accordance with a NAFTA panel remand.  32 CIT 1118–

19, 580 F. Supp. 2d at 1354–55.  Plaintiffs challenged the effective date of the revocation, as

announced in a revocation notice.  *Id.* at 1120, 580 F. Supp. 2d at 1356.  The court held that it

had § 1581(i)(4) jurisdiction because § 1581(c) jurisdiction was unavailable.  *Id.* at 1121, 1124,

580 F. Supp. 2d at 1357, 1359.  Although § 1581(c) provided jurisdiction over final

determinations reached in investigations, the statutory provisions governing investigations did

not address post-NAFTA-remand revocations or their effective dates.  *Compare* 19 U.S.C.

§ 1516a(a)(2)(B)(i), *with* 19 U.S.C. §§ 1671d, 1673d.  Therefore, the revocation notice did not

announce a final determination reviewable under 19 U.S.C. §1516a.  *Id.* at 1121, 1124, 580 F.

Supp. 2d at 1357, 1359.

*Canadian Wheat Board* does not control here.  Section 1581(c) provides jurisdiction over

challenges to final determinations reached in five-year-reviews, and the provisions governing

five-year reviews explicitly address revocations and continuations alike.  *Compare* 19 U.S.C.

§ 1516a(a)(2)(B)(iii), *with* 19 U.S.C. § 1675(c), (d)(2).  The situation is wholly unlike *Canadian*

*Wheat Board*, where the statute made no mention of what to do following a NAFTA panel

remand.  In sum, the court holds that it has § 1581(c) jurisdiction over Deacero's claim.[6, 7]

## II.     These Proceedings Should Be Stayed Pending a Decision in the Federal Circuit Appeal

In the alternative to its jurisdictional challenge, Arcelormittal argues that these

proceedings should be stayed pending a decision in the Federal Circuit appeal, primarily for the

sake of judicial economy.  Arcelormittal makes much of Deacero's acknowledgment that "if th[is

c]ourt's opinion in [*Deacero I*] were upheld on appeal, 'the present appeal would no longer be

necessary."  Def.-Intervenors' Reply to Pls.' Resp. to Def.-Intervenors' Mot. to Dismiss or, in

Alternative, Mot. to Stay Proceedings 12, ECF No 36 (citing Resp. in Opp'n to Def.-Intervenors'

Mot. to Dismiss or, in Alternative, Mot. to Stay Proceedings 16, ECF No 35 ("Pls.' Resp. Br.")).

Arcelormittal says the court should avoid using judicial resources on this case until the court is

sure that doing so will not be wasteful.

Both Deacero and the United States oppose staying this case, though only Deacero offers

any explanation.  Pls.' Resp. Br. 15 (citing Joint Status Report & Proposed Briefing Schedule 2,

---

[6] Arcelormittal also argues in its reply brief that Deacero's claim is "predicated on the faulty claim that the ITC reached a negative determination on 4.75 mm wire rod."  Def.-Intervenors' Reply to Pls.' Resp. to Def.-Intervenors' Mot. to Dismiss or, in Alternative, Mot. to Stay Proceedings 6, ECF No 36.  Arcelormittal argues that the ITC clearly did not make a negative determination on sub-5.00 mm wire rod:  The Commission has no authority to determine scope, so it simply limited its injury analysis to wire rod above 5.00 mm in accordance with Commerce's most recent redetermination of scope—i.e. the First Remand Results.  And the Commission reached an affirmative, not negative, determination, with respect to such wire rod.  *Id.* at 6–8.

    The court disagrees with Arcelormittal's premise.  Deacero is not claiming that the Commission made a negative five-year injury determination on sub-5.00 mm wire rod.  Rather, Deacero claims that, in the absence of an affirmative five-year injury determination on sub-5.00 mm wire rod, Commerce was obligated to expressly confine the Order's scope to wire rod above 5.00 mm in the Continuation Notice.  Complaint 7–8.

[7] Even if the court were to lack § 1581(c) jurisdiction over Deacero's claim because the Continuation Notice is not a final determination under § 1675, the court would nonetheless have jurisdiction under § 1581(i)(4).  Section 1581(i)(4) vests the court with "exclusive jurisdiction of any civil action commenced against the United States . . . that arises out of any law of the United States providing for . . . administration and enforcement with respect to the matters referred to in [the rest of § 1581]."  Supposing the Continuation Notice is not a final determination under § 1675, it is plainly a part of Commerce's "administration and enforcement" of § 1675, warranting § 1581(i)(4) jurisdiction.

ECF No. 30 ("Joint Status Report")).  According to Deacero, "[a] stay would result in delayed

relief to [it], and could create needless delay and inefficiency for [the United States]."  *Id.*

Recall the standard for imposing a stay:  "A court may properly determine that it is

efficient for its own docket and the fairest course for the parties to enter a stay of an action

before it, pending resolution of independent proceedings which bear upon the case."  *Diamond

Sawblades*, 34 CIT at 406.  "However, the party moving for a stay 'must make out a clear case of

hardship or inequity in being required to go forward, if there is even a fair possibility that the

stay for which he prays will work damage to some one else.'"  *Id.* (quoting *Landis*, 299 U.S. at

255).

Notwithstanding Deacero's argument to the contrary, the court finds that there is no "fair

possibility" that a stay will damage Deacero's and the United States' interests.  At the outset of

the litigation underlying the Federal Circuit appeal, Deacero itself requested that this court enjoin

Customs from liquidating entries of wire rod exported by Deacero with a diameter between 4.75

and 5.00 mm.  *See* Order Enjoining Liquidation.  The court granted Deacero's request,

"enjoin[ing liquidation] during the pendency of this [Circumvention Determination] litigation,

including any and all appeals and remand proceedings."  *Id.* at 1.  Because the injunction on

liquidation will remain in place until the Federal Circuit appeal is resolved, Deacero can obtain

no remedy in this case until that time.  Put another way, staying this case puts Deacero in no

different a situation than it is already in.  A stay cannot damage Deacero's interests.[8]

Turning to the United States' interests, the United States has not itself explained why it

opposes a stay or asserted that there is a "fair possibility" that a stay would damage its interests.

---

[8] Perhaps the court could provide a remedy to Deacero, such that a stay would damage Deacero's interests, if Customs were currently collecting cash deposits on Deacero's entries.  But, as of June 22, 2015, Customs is not doing so.  *Carbon and Certain Alloy Steel Wire Rod From Mexico*, 80 Fed. Reg. 35,626, 35,626 (Dep't Commerce June 22, 2015) (final admin. review results).

*See* Joint Status Report 2–3.  Without hearing directly from the United States, the court cannot

treat Deacero's assertion that a stay would create "needless delay and inefficiency" for the

United States as anything more than speculation.  Pls.' Resp. Br. 15.  Because Deacero cannot

establish a fair possibility that a stay would damage Deacero's or the United States' interests, the

court finds Arcelormittal's invocation of judicial economy convincing.  There is no reason to

resolve this case until the court can be sure that Deacero will be interested in continuing it.  The

court therefore stays this case pending resolution of the Federal Circuit appeal.

## CONCLUSION AND ORDER

For the foregoing reasons, this Court possesses jurisdiction under § 1581(c), and these

proceedings are stayed pending resolution of the Federal Circuit appeal.  Upon consideration of

all papers and proceedings herein, and upon due deliberation, it is hereby

**ORDERED** that Arcelormittal's Motion to Dismiss or, in The Alternative, Motion to
Stay Proceedings be, and hereby is, GRANTED insofar as the court stays this case and DENIED
insofar as the court declines to dismiss this case for lack of jurisdiction; it is further

**ORDERED** that this case be, and hereby is, stayed until 30 days after the final resolution
of all appellate review proceedings in *Deacero S.A. de C.V. v. United States*, CAFC Court No.
2015-1367.

/s/ Richard W. Goldberg
Richard W. Goldberg
Senior Judge

Dated:      August 17    , 2015
New York, New York